IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA; | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:19-cv-4601 |
| | ) | |
| EPCON COMMUNITIES, LLC and EPCON | ) | |
| COMMUNITIES FRANCHISING, INC.; | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## COMPLAINT

The United States of America alleges as follows:

## NATURE OF THE ACTION

1.      This is a civil action brought by the United States to enforce the provisions of the Fair Housing Act, 42 U.S.C. §§ 3601-3619 ("FHA").

2.      This action is brought pursuant to 42 U.S.C. § 3612(o) on behalf the Fair Housing Advocates Association ("FHAA").  The FHAA filed a complaint with the Secretary of the United States Department of Housing and Urban Development ("HUD"), alleging that the Defendants had discriminated on the basis of disability in violation of the FHA.  As explained in greater detail in paragraphs 98-101, following that complaint, the Secretary completed an investigation, determined that Defendants had engaged in discriminatory housing practices in violation of the FHA, and issued a charge of discrimination against the Defendants.  After the FHAA elected to have the merits of the charge determined in a civil action in federal court, the Secretary referred the matter to the United States and authorized it to file this action.

3.      This action is also brought pursuant to the United States Attorney General's authority under 42 U.S.C. § 3614(a) to seek redress for a pattern or practice of housing discrimination and for the denial of rights to a group of persons that raises an issue of general public importance.

4.      The Fair Housing Act requires that certain multifamily dwelling multi-family dwellings developed for first occupancy after March 13, 1991, defined in the FHA as "covered multifamily dwellings", contain specified accessibility features to make them accessible to person with disabilities.  42 U.S.C. §§ 3604(f)(3)(C) & 3604(f)(7).  As set forth below, the United States alleges that Defendants have discriminated against persons with disabilities by failing to design and construct covered multifamily dwellings at 32 multifamily properties throughout Ohio with these required accessibility features.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. §§3612(o) and 3614(a).

6.      Venue is proper in this District under 28 U.S.C. §1391 because (a) both Defendants do business in this District; (b) a substantial part of the events or omissions giving rise to the United States' allegations occurred in this District; and (c) a substantial number of the subject properties are located in this District.

## SUBJECT PROPERTIES

7.      From approximately 2005 to 2014, Defendants Epcon Communities, LLC ("ECI") and Epcon Communities Franchising, Inc. ("ECFI") participated in the design, construction, or design and construction of 32 multifamily developments in Ohio, which are referred to herein as the "Subject Properties."   Together, the Subject Properties have over 2,400

covered multifamily dwellings. Each of the Subject Properties has common design elements originally developed by ECI and subsequently used by ECFI as well. Each property has residential buildings with four dwelling units and every property other than The Courtyards at Seldom Seen also has a clubhouse.[1] The clubhouse, the residential buildings, and the dwelling units contained within those residential buildings, were designed and constructed in accordance with proprietary prototype design plans that are owned and used by ECI and ECFI. ECI developed 11 of these properties directly, and those properties are referred to herein as the "Corporate Properties." ECFI developed the 21 additional properties through franchise agreements with franchisees. These properties are referred to herein as the "Franchised Properties."

## Corporate Properties

8. Defendant Epcon Communities, LLC ("ECI") has participated in the design, construction, or design and construction of the following Corporate Properties.

9. Cobblestone at the Preserve is a multifamily development located at 6200 Stonewalk Lane, New Albany, Ohio. The property has residential buildings with four dwelling units and has approximately 156 covered multifamily dwellings. The property was designed and constructed for first occupancy from approximately 2010 to 2012.

10. The Courtyards at Seldom Seen is a multifamily development located at 3831 Coral Creek Court, Powell, Ohio. The property has residential buildings with four dwelling units and has approximately 12 covered multifamily dwellings. The property was designed and constructed for first occupancy in approximately 2005.

---

[1] At The Courtyards at Seldom Seen, residents have the right to use the clubhouse at a neighboring property not developed by ECI or ECFI.

11.     Fountainview at Parkway is a multifamily development located at 1534 Cascade Drive, Grove City, Ohio.  The property has residential buildings with four dwelling units and has approximately 132 covered multifamily dwellings.  The property was designed and constructed for first occupancy from approximately 2007 to 2008.

12.     The Village at North Falls is a multifamily development located at 6951 Falls View Circle, Delaware, Ohio.  The property has residential buildings with four dwelling units and has approximately 124 covered multifamily dwellings.  The property was designed and constructed for first occupancy from approximately 2010 to 2012.

13.     The Villas at Canterbury Woods is a multifamily development located at 595 Havelock Street, Westerville, Ohio.  The property has residential buildings with four dwelling units and has approximately 136 covered multifamily dwellings.  The property was designed and constructed for first occupancy in approximately 2008.

14.     The Villas at Glenealy is a multifamily development located at 6315 Donegan Way, Dublin, Ohio.  The property has residential buildings with four dwelling units and has approximately 88 covered multifamily dwellings.   The property was designed and constructed for first occupancy from approximately 2011 to 2012.

15.     The Villas at Maple Creek is a multifamily development located at 7544 Red Maple Place, Westerville, Ohio. The property has residential buildings with four dwelling units and has approximately 148 covered multifamily dwellings.  The property was designed and constructed for first occupancy in approximately 2005.

16.     The Villas at Woodcutter is a multifamily development located at 3285 Timberside Drive, Powell, Ohio.  The property has residential buildings with four dwelling units

and has approximately 68 covered multifamily dwellings. The property was designed and constructed for first occupancy from approximately 2004 to 2006.

17. Windsor Bridge at the Preserve is a multifamily development located at 4150 Windsor Bridge Place, New Albany, Ohio. The property has residential buildings with four dwelling units and has approximately 128 covered multifamily dwellings. The property was designed and constructed for first occupancy from approximately 2004 to 2005.

18. The Woods at Hayden Run is a multifamily development located at 5867 Timber Top Drive, Hilliard, Ohio. The property has residential buildings with four dwelling units and has approximately 68 covered multifamily dwellings. The property was designed and constructed for first occupancy in approximately 2012.

19. The Woods at Sugar Run is a multifamily development located at 5545 Armstead Avenue, New Albany, Ohio. The property has residential buildings with four dwelling units and has approximately 44 covered multifamily dwellings. The property was designed and constructed for first occupancy between 2012 and 2014.

**Franchised Properties**

20. Defendant Epcon Communities Franchising, Inc. ("ECFI") has participated in the design and construction of the following properties, which shall be referred to as the Franchised Properties.

21. Ballymeade Village is a multifamily development located at 665 Ballymeade Village Drive, Beavercreek, Ohio. The property has residential buildings with four dwelling units and has approximately 40 covered multifamily dwellings. The property was designed and constructed for first occupancy from approximately 2006 to 2008.

22.     Bridgewater is a multifamily development located at 1500 Bridgewater Way South, Mansfield, Ohio.  The property has residential buildings with four dwelling units and has approximately 60 covered multifamily dwellings.   The property was designed and constructed for first occupancy from approximately 2006 to 2008.

23.     Fairway Villas at Catawba Island Club is a multifamily development located at 2675 Canterbury Circle, Port Clinton, Ohio.  The property has residential buildings with four dwelling units and has approximately 152 covered multifamily dwellings.  The property was designed and constructed for first occupancy from approximately 2005 to 2008.

24.     Fairways at Boulder Creek is a multifamily development located at 9670 Eagle Lane, Streetsboro, Ohio.  The property has residential buildings with four dwelling units and has approximately 60 covered multifamily dwellings.  The property was designed and constructed for first occupancy from approximately 2006 to 2008.

25.     Quarry Lakes at Amherst is a multifamily development located at 101 Quarry Lakes Drive, Amherst, Ohio.  The property has residential buildings with four dwelling units and has approximately 44 covered multifamily dwellings.  The property was designed and constructed for first occupancy in approximately 2008.

26.     Reddington Village is a multifamily development located at Reddington Village Lane, Newark, Ohio.  The property has residential buildings with four dwelling units and has approximately 69 covered multifamily dwellings.  The property was designed and constructed for first occupancy from approximately 2004 to 2006.

27.     The Sanctuary at Plum Brook is a multifamily development located at 2900 Windsor Bridge Circle, Huron, Ohio.  The property has residential buildings with four dwelling

units and has approximately 40 covered multifamily dwellings. The property was designed and constructed for first occupancy from approximately 2007 to 2008.

28. Springfield Ridge is a multifamily development located at 9151 Springfield Road, Poland, Ohio. The property has residential buildings with four dwelling units and has approximately 72 covered multifamily dwellings. The property was designed and constructed for first occupancy from approximately 2004 to 2005.

29. The Village of Colonial Woods is a multifamily development located at 201 Abigail Lane South, Mount Vernon, Ohio. The property has residential buildings with four dwelling units and has approximately 20 covered multi-family dwellings. The property was designed and constructed for first occupancy from approximately 2006 to 2008.

30. Village at Riverwalk is a multifamily development located at 2800 Riverwalk Boulevard, Lima, Ohio. The property has residential buildings with four dwelling units and has approximately 36 covered multifamily dwellings. The property was designed and constructed for first occupancy from approximately 2005 to 2009.

31. The Villages of River Oaks is a multifamily development located at 100 Oak Run, Heath, Ohio. The property has residential buildings with four dwelling units and has approximately 68 covered multifamily dwellings. The property was designed and constructed for first occupancy from approximately 2005 to 2008.

32. The Villas at Beavercreek is a multifamily development located at 2830 Locust Hill Boulevard, Beavercreek, Ohio. The property has residential buildings with four dwelling units and has approximately 72 covered multifamily dwellings. The property was designed and constructed for first occupancy from approximately 2006 to 2008.

33.     The Villas at Benchrock is a multifamily development located at 4661 Cobblestone Drive, Tipp City, Ohio.  The property has residential buildings with four dwelling units and has approximately 104 covered multifamily dwellings.  The property was designed and constructed for first occupancy from approximately 2004 to 2006.

34.     Villas at Charleston Lake is a multifamily development located at 6305 Lakeview Circle, Canal Winchester, Ohio.  The property has residential buildings with four dwelling units and has approximately 112 covered multifamily dwellings.  The property was designed and constructed for first occupancy from approximately 2006 to 2008.

35.     The Villas at Foor Farms is a multifamily development located at 115 Stonegate Drive, Pataskala, Ohio.  The property has residential buildings with four dwelling units and has approximately 68 covered multifamily dwellings.   The property was designed and constructed for first occupancy from approximately 2005 to 2008.

36.     Villas at Hamilton West is a multifamily development located at 1343 Cotswold Lane, Hamilton, Ohio.  The property has residential buildings with four dwelling units and has approximately 84 covered multifamily dwellings.  The property was designed and constructed for first occupancy from approximately 2005 to 2013.

37.     Villas at Milnor Crossing is a multifamily development located at 101 Jamie Lynn Circle, Pickerington, Ohio.  The property has residential buildings with four dwelling units and has approximately 84 covered multifamily dwellings.  The property was designed and constructed for first occupancy from approximately 2005 to 2008.

38.     The Villas at Park Place is a multifamily development located at 7955 Beckett Road, West Chester, Ohio.  The property has residential buildings with four dwelling units and

has approximately 12 covered multifamily dwelling units. The property was designed and constructed for first occupancy in approximately 2011.

39.     Wellington Place is a multifamily development located at 5361 East Sheffield Circle, Zanesville, Ohio. The property has residential buildings with four dwelling units and has approximately 28 covered multifamily dwelling units. The property was designed and constructed for first occupancy in approximately 2008.

40.     Woodland Run is a multifamily property located at 701 Timberline Drive, Columbiana, Ohio. The property has residential buildings with four dwelling units and has approximately 84 covered multifamily dwellings. The property was designed and constructed for first occupancy in approximately 2004.

41.     The Woods on Wilkens is a multifamily property located at 5206 Elizabeth Lane, Mason, Ohio. The property has residential buildings with four dwelling units and has approximately 64 covered multifamily dwellings. The property was designed and constructed for first occupancy from approximately 2006 to 2007.

## **DEFENDANTS**

42.     Defendant Epcon Communities, LLC ("ECI") is an Ohio limited liability company whose principal place of business is located at 500 Stonehenge Parkway, Dublin, Ohio 43017, in the Southern District of Ohio. ECI was founded in 1986 by Ed Bacome and Phil Frankhauser. Since its founding, ECI has developed 46 condominium communities in Ohio, including the 11 Corporate Properties described in this Complaint.

43.     Defendant Epcon Communities Franchising, Inc. ("ECFI") is an Ohio corporation whose principal place of business is located at 500 Stonehenge Parkway, Dublin, Ohio 43017, in the Southern District of Ohio. Ed Bacome and Phil Frankhauser founded ECFI in 1995 so that it

could develop through franchise agreements the same kinds of condominium communities developed directly by ECI.

44.     Defendant ECI participated in and controlled the design and construction of the Corporate Properties.  As set forth below in paragraphs 63 through 73, each of the Corporate Properties was designed and constructed without the accessibility features required by the Fair Housing Act.  As the entity that developed, designed and constructed the Corporate Properties, Defendant ECI is liable for the violations of the Fair Housing Act at the Corporate Properties.

45.     Defendant ECFI participated in and controlled the design and construction of the Franchised Properties through Franchise Agreements that it entered into with the franchisees for each property.

46.     The Franchise Agreements required the franchisees to develop the Franchised Properties in accordance with ECFI's Development System, which the Franchise Agreements define to include  ECFI's "method, pattern, documents, materials, know-how, knowledge, process, and procedure used for development, construction, and marketing of the residential, multi-family community using a unique architectural design, as well as other proprietary and confidential information, including ... all architectural plans and specifications for two- and four-unit buildings, architectural plans and specifications for the clubhouse, [and] site planning guidelines…."  The Franchise Agreements also define ECFI's Development System to include ECFI's detailed Operations Manual, Construction Manual, and Construction Specifications Manual. The Franchise Agreements required the franchisees to seek approval for any deviation from ECFI's Development System and gave ECFI the right to terminate the Franchise Agreement if the franchisee failed to comply with ECFI's Development System.

47.     ECFI's Development System included prototype design plans for the clubhouse and for each of the unit types to be built at the Franchised Properties. The Franchise Agreements required franchisees to follow these prototype design plans when designing and constructing their properties and also required them to seek ECFI's review and approval for any deviations to those plans.

48.     ECFI's prototype design plans for their Clubhouse fail to ensure compliance with the accessibility requirements of the Fair Housing Act because (a) wall-mounted objects specified on the plans protrude too far into the space designed to be used by persons who use the clubhouse, posing a hazard to persons with visual disabilities; and (b) the kitchen sink and counter specified on the design plans are placed too high to be used by persons in wheelchairs from a seated position; and (c) the space under the sink specified in the design plans is too narrow to allow wheelchair users to pull the front part of their wheelchairs under the sink so that they can use it.

49.     ECFI's prototype plans for covered multifamily dwellings contain specifications that do not comply with the accessibility requirements of the Fair Housing Act. The non-compliant features in ECFI's prototype plans for covered multifamily dwellings plans include, but are not limited to: insufficient clear space for a persons in wheelchairs to maneuver outside the entry door of some units; insufficient clear floor space for wheelchair users to maneuver about and use the bathrooms in some units; and walk-in closets in some units that are too narrow for wheelchair users to pass through.

50.     ECFI's prototype plans contained separate "Handicap Accessibility Notes", that were also part of ECFI's Development System, which set forth various requirements that

franchisees were required to follow in designing and constructing the Franchised Properties to ensure they complied with the accessibility requirements of the Fair Housing Act.

51.     Notwithstanding these requirements, the Franchised Properties were designed and constructed in a manner that was inconsistent with the Handicap Accessibility Notes.  Among other things, as built, the Franchised Properties failed to comply with the Accessibility Notes because: the Clubhouses were not readily accessible to persons with disabilities; there were no accessible route from the covered multifamily dwelling units to the Clubhouse; thresholds at the entries to Clubhouses, and covered multifamily dwelling units were too high for wheelchair users and other persons with disabilities to traverse safely; doors designed for user passage were too narrow for wheelchair users;  outlets and environmental controls were not mounted in accessible locations; and kitchens and bathrooms did not have adequate clear floor space for persons in wheelchairs to maneuver about and use them.

52.     ECFI was aware that the Franchised Properties did not comply with the specifications set forth in the Handicap Accessibility Notes, but it failed to exercise its authority under the Franchise Agreements to ensure such compliance.

53.      Through the Franchise Agreements and its Development System, ECFI had the authority to control the design and construction of the Franchised Properties, including compliance with the accessibility requirements of the Fair Housing Act.

54.     Pursuant to its Franchise Agreements, ECFI took steps to monitor whether the Franchised Properties were being designed and constructed in compliance with its Development System. Those steps included, but were not limited to, reviewing and approving site plans and architectural plans for the Franchised Properties, inspecting each of the Franchised Properties during its design and construction for compliance with ECFI's Development System and visiting

the Franchised Properties at or near the end of construction to ensure that the properties were being marketed in compliance with ECFI's Development System.

55. Through its actions described above, Defendant ECFI had actual knowledge that the Franchised Properties were not designed and constructed in compliance with the accessibility requirements of the Fair Housing Act. Notwithstanding this knowledge, Defendant ECFI failed to exercise the authority it had under its Franchise Agreements to ensure compliance with the Fair Housing Act.

56. As set forth below in paragraphs 74 through 94, each of the Franchised Properties failed to comply in various ways with the accessibility requirements of the Fair Housing Act. Through its knowing failure to exercise its authority to ensure compliance with the Fair Housing Act, Defendant ECFI caused and is liable for the violations of the Fair Housing Act at the Franchised Properties.

## Inaccessible Features at the Subject Properties

57. Each of the Subject Properties was designed and constructed for first occupancy after March 13, 1991.

58. Each of the Subject Properties is a "dwelling" and contains "dwellings" within the meaning of 42 U.S.C. § 3602(b).

59. Each of the Subject Properties contains "covered multifamily dwellings" within the meaning of 42 U.S.C. § 3604(f)(7)(B).

60. The covered multifamily dwellings at the Subject Properties are subject to the accessibility requirements of 42 U.S.C. § 3604(f)(3)(C).

61. The covered multifamily dwellings at the Subject Properties were not designed and constructed in compliance with the accessibility requirements of 42 U.S.C. § 3604(f)(3)(C).

62. The following is an illustrative, but not exhaustive, list of inaccessible features created and caused by Defendants in designing and constructing the Subject Properties.

**Inaccessible Features at the Corporate Properties**

**Cobblestone at the Preserve**

63. The inaccessible features at Cobblestone at the Preserve include, but are not limited to:

a. barriers to amenities provided onsite, such as the clubhouse, swimming pool, a gazebo, and mailbox kiosks, including: there is no accessible pedestrian route from covered multifamily dwelling units to onsite amenities; slopes on the walkway between the clubhouse and the pool deck and on the route to the gazebo are too steep for wheelchair users and other persons with disabilities to traverse safely; the threshold at the clubhouse entrance is too high for wheelchair users and other persons with disabilities to traverse safely; there is knob-style hardware rather than lever-style hardware at the pool gate, which makes it difficult for persons with disabilities to grasp and open; and mailboxes are mounted too high for wheelchair users to reach from a seated position;

b. barriers in the routes leading to, and at, entry doors of covered multifamily dwellings, including: slopes on walkways and driveways are too steep for wheelchairs users and other persons with disabilities to traverse safely; there is insufficient clear floor space for wheel chair users outside the entry doors, which make the entries difficult or impossible for wheelchair users to use; and exterior thresholds are too high for wheelchair users and other persons with disabilities to traverse safely;

c. barriers within the common use areas of the clubhouse, which make it difficult for wheelchair users and other persons with disabilities to use, including: the kitchen sink and

counter are too high to be used by wheelchair users from a seated position; the space under the kitchen sink is too narrow to allow wheelchair users to pull their knees under the sink so that they can use it; the toilets in the restrooms are too close to the sidewall to allow wheelchair users to access the toilet; thermostats are mounted too high for wheelchair users to reach from a seated position; and wall-mounted objects, including wall-mounted sconces, the fireplace mantel, and a towel shelf, protrude too far into the circulation space and could injure persons with visual disabilities;

d. barriers in covered multifamily dwelling units, including: thermostats are mounted too high for wheelchair users to reach from a seated position; outlets are mounted too low for wheelchair users to reach from a seated position; thresholds leading into the units are too high for wheelchair users and other persons with disabilities to traverse safely; there is insufficient maneuvering space in kitchens in covered multifamily dwelling units to allow wheelchair users to use the sinks; and there is insufficient maneuvering space in bathrooms for wheelchairs users to enter the bathroom and close the door behind them or to use the sink.

### Courtyards at Seldom Seen

64. The inaccessible features at Courtyards at Seldom Seen include, but are not limited to, barriers in the walkways that lead to covered multifamily dwelling units, including slopes that are too steep and abrupt changes in level that are too high for wheelchairs users and other persons with disabilities to traverse safely.

### Fountainview at Parkway

65. The inaccessible features at Fountainview at Parkway include, but are not limited to:

a.      barriers to amenities provided onsite, such as the clubhouse, fitness center, swimming pool, and mailbox kiosks, including: there is no accessible pedestrian route from covered multifamily dwelling units to onsite amenities; slopes on the route between the parking and the clubhouse are too high for wheelchair users and other persons with disabilities to traverse safely; thresholds at the entrance to the clubhouse, as well as to the men's and women's pool restrooms, are too high for wheelchair users and other persons with disabilities to traverse safely; there is a step at the entrance to the fitness center; and mailboxes are mounted too high for wheelchair users to reach from a seated position;

b.      barriers in the walkways leading to the unit entries, including slopes that are too steep for wheelchairs users and other persons with disabilities to traverse safely; and

c.      barriers within the common use areas of the clubhouse, which make it difficult for wheelchair users and other persons with disabilities to use, including: the kitchen sink and counter are too high to be used by wheelchair users from a seated position; the space under the kitchen sink is too narrow to allow wheelchair users to pull their knees under the sink so that they can use it; the toilets in the restrooms are too close to the sidewall to allow wheelchair users to access the toilet; the built in microwave and thermostats are mounted too high for wheelchair users; and there is insufficient clear floor space at the urinal in the men's bathroom for wheelchair users.

### Village at North Falls

66.     The inaccessible features at Village at North Falls include, but are not limited to:

a.      barriers to amenities provided onsite, such as the clubhouse, swimming pool, and mailbox kiosks, including: there is no accessible pedestrian route from covered multifamily dwelling units to onsite amenities; the slopes on the route between the parking and the

clubhouse are too steep for wheelchair users and other persons with disabilities to traverse safely; the exterior side threshold at the entrance to the women's pool restrooms is too high for wheelchair users and other persons with disabilities to traverse safely; and mailboxes are mounted too high for wheelchair users to reach from a seated position;

b.      barriers in the walkways to the units, including slopes that are too steep for wheelchairs users and other persons with disabilities to traverse safely; and

c.      barriers within the common use areas of the clubhouse, which make it difficult for wheelchair users and other persons with disabilities to use, including: the kitchen sink and counter are too high to be used by wheelchair users from a seated position; the built in microwave and thermostats are mounted too high for wheelchair users; and there is insufficient clear floor space for wheelchair users at the urinal in the men's restroom.

## Villas at Canterbury Woods

67.      The inaccessible features at Villas at Canterbury Woods, include, but are not limited to:

a.      barriers at amenities provided onsite, such as the clubhouse and mailbox kiosks, including: there is no accessible pedestrian route from covered multifamily dwelling units to onsite amenities; and mailboxes are mounted too high for wheelchair users to reach from a seated position; and

b.      barriers within the common use areas of the clubhouse, which make it difficult for wheelchair users and other persons with disabilities to use, including: the kitchen sink and counter are too high to be used by wheelchair users from a seated position; and the space under the kitchen sink is too narrow to allow wheelchair users to pull their knees under the sink so that they can use it.

**Villas at Glenealy**

68.     The inaccessible features at The Villas at Glenealy include, but are not limited to:

a.     barriers to amenities provided onsite, such as the clubhouse, swimming pool, and mailbox kiosks, including; there is no accessible pedestrian route from units to onsite amenities; the thresholds at the entrances to the men's and women's pool restrooms are too high for wheelchair users and other persons with disabilities to traverse safely; and mailboxes are mounted too high for wheelchair users to reach from a seated position; and

b.     barriers within the common use areas of the clubhouse, which make it difficult for wheelchair users and other persons with disabilities to use, including the space under the kitchen sink in the clubhouse is too narrow for wheelchair users to pull their knees under the sink so that they can use it.

**Villas at Maple Creek**

69.     The inaccessible features at Villas at Maple Creek include, but are not limited to:

a.     barriers to  amenities provided onsite, such as the clubhouse, swimming pool, and mailbox kiosks, including: there is no accessible pedestrian route from covered multifamily dwelling units to onsite amenities; and mailboxes are mounted too high for wheelchair users to reach from a seated position; and

b.     barriers within the common use areas of the clubhouse, which make it difficult for wheelchair users and other persons with disabilities to use, including: the kitchen sink, counter, and bar, are too high to be used by wheelchair users from a seated position; the space under the kitchen sink is too narrow for wheelchair users to pull their knees under the sink so that they can use it; and thermostats are mounted too high for wheelchair users to reach from a seated position.

**Villas at Woodcutter**

70.     The inaccessible features at The Villas at Woodcutter include, but are not limited to:

a.      barriers to amenities provided onsite, such as the clubhouse, fitness center, swimming pool, and mailbox kiosks, including: there is no accessible pedestrian route from covered multifamily dwelling units to onsite amenities; slopes on the route from the clubhouse parking to the clubhouse are too high for wheelchair users and other persons with disabilities to traverse safely; thresholds at the fitness center and the women's and men's pool restrooms are too high for wheelchair users and other persons with disabilities to traverse safely; and mailboxes are mounted too high for wheelchair users to reach from a seated position;

b.      barriers in the routes leading to, and at, the entry doors to covered multifamily dwelling units, including: changes in level at one or more entries that are too high for wheelchair users and other persons with disabilities to traverse safely; and slopes on walkways and driveways that are too steep for wheelchairs users and other persons with disabilities to traverse safely; and

c.      barriers within the common use areas of the clubhouse, which make it difficult for wheelchair users and other persons with disabilities to use, including: the kitchen sink and counter are too high to be used by wheelchair users from a seated position; the space under the kitchen sink is too narrow to for wheelchair users to pull their knees under the sink so that they can use it; and the built in microwave and thermostats are mounted too high to be reached by wheelchair users from a seated position.

**Windsor Bridge at the Preserve**

71. The inaccessible features at Windsor Bridge at the Preserve include, but are not limited to:

a. barriers to amenities provided onsite, such as the clubhouse, fitness center and mailbox kiosks, including: there is no accessible route from covered multifamily dwelling units to the onsite amenities; there is no curb cut connecting the designated accessible parking to the walkway that leads to the clubhouse; there are multiple steps leading to the clubhouse entrance; and the threshold at the entrance to the fitness center is too high for wheelchair users and other persons with disabilities to traverse safely;

b. barriers in the routes to the entry doors of covered multifamily dwelling units, including slopes on driveways and walkways that are too steep for wheelchair users and other persons with disabilities to traverse safely; and

c. barriers within the common use areas of the clubhouse, which make it difficult for wheelchair users and other persons with disabilities to use, including: the kitchen sink and counter are too high to be used by wheelchair users from a seated position; the space under the kitchen sink is too narrow for wheelchair users to pull their knees under the sink so that they can use it; the built in microwave and thermostats are mounted too high for wheelchair users to reach from a seated position; and there is insufficient clear floor space for wheelchair users at the urinal in the men's bathroom.

**The Woods at Hayden Run**

72. The inaccessible features at The Woods at Hayden Run include, are not limited to:

a. barriers to amenities provided onsite, such as the clubhouse, swimming pool, and mailbox kiosks, including: there is no accessible pedestrian route from units to onsite amenities; there is no curb cut connecting the designated accessible parking to the walkway

that leads to the clubhouse; the thresholds at the men's and women's pool restrooms are too high for wheelchair users and other persons with disabilities to traverse safely; there is knob-style hardware rather than lever-style hardware at the pool gate, which makes it difficult for persons with disabilities to grasp and open; and mailboxes are mounted too high for wheelchair users to reach from a seated position; and

b.      barriers within the common use areas of the clubhouse, which make it difficult for wheelchair users and other persons with disabilities to use, including: the kitchen sink and counter are too high to be used by wheelchair users from a seated position; and the space under the kitchen sink is too narrow for wheelchair users to pull their knees under the sink so that they can use it.

## The Woods at Sugar Run

73.      The inaccessible features at The Woods at Sugar Run include, but are not limited to:

a.      barriers to amenities provided onsite, such as the clubhouse, swimming pool, and mailbox kiosks, including: there is no accessible pedestrian route from covered multifamily dwelling units to onsite amenities; and the slopes on the walkway to the clubhouse are too steep for wheelchair users and other persons with disabilities to traverse safely;

b.      barriers in the walkways leading to entry doors of covered multifamily dwelling units, including slopes that are too steep for wheelchair users and other persons with disabilities to traverse safely; and

c.      barriers within the common use areas of the clubhouse, which make it difficult for wheelchair users and other persons with disabilities to use, including: the kitchen sink and counter are too high to be used by wheelchair users from a seated position; the space under

the kitchen sink is too narrow for wheelchair users to pull their knees under the sink so that they can use it; and the thermostat and paper towel dispensers are mounted too high to be reached by wheelchair users.

### Inaccessible Features at the Franchised Properties

### Ballymeade Village

74.     The inaccessible features at Ballymeade Village include, but are not limited to:

a.     barriers at amenities provided onsite, such as the clubhouse, swimming pool, and mailbox kiosks, including; there is no accessible pedestrian route from covered multifamily dwelling units to the onsite amenities; there are slopes on the walkway from the parking lot to the clubhouse that are too steep for wheelchair users and other persons with disabilities to traverse safely; and mailboxes are mounted too high for wheelchair users to reach from a seated position; and

b.     barriers within the common use areas of the clubhouse that make it difficult for wheelchair users and other persons with disabilities to use, including:  the kitchen sink, counter, and bar are too high to be used by wheelchair users from a seated position; and the toilets in the restrooms are not readily accessible to and usable by wheelchair users because they are too close to the sidewall.

### Bridgewater

75.     The inaccessible design/and or construction features at Bridgewater include, but are not limited to:

a.     barriers at amenities provided onsite, such as the clubhouse and mailbox kiosks, including:  there is no accessible pedestrian route from covered multifamily dwelling units to

onsite amenities; and mailboxes are mounted too high for wheelchair users to reach from a seated position; and

b.      barriers within the common use areas of the clubhouse, which make it difficult for wheelchair users and other persons with disabilities to use, including: the kitchen sink and counter are too high to be used by wheelchair users from a seated position; and the space under the kitchen sink is too narrow for wheelchair users to pull their knees under the sink so that they can use it.

### Fairway Villas at Catawba Island

76.      The inaccessible features at Fairways at Catawba Island include, but are not limited to:

a.      barriers at amenities provided onsite, such as the clubhouse, swimming pool, putting green, and mailbox kiosks, including: there is no accessible pedestrian route from covered multifamily dwelling units to the onsite amenities; there is a step up from the parking lot to the putting green with no curb cut; and mailboxes are mounted too high for wheelchair users to reach from a seated position; and

b.      barriers within the common use areas of the clubhouse that make it difficult for wheelchair users and other persons with disabilities to use, including: the bar counter is too high to be used by wheelchair users from a seated position; and the space under the kitchen sink is too narrow for wheelchair users to pull their knees under the sink so that they can use it.

### Fairways at Boulder Creek

77.      The inaccessible features at Fairways at Boulder Creek include, but are not limited to: barriers at amenities provided onsite, such as the clubhouse, swimming pool, and

mailbox kiosks, including: there is no accessible pedestrian route from covered multifamily dwelling units to onsite amenities; there is no designated accessible parking at the clubhouse; and mailboxes are mounted too high for wheelchair users to reach from a seated position.

### Quarry Lakes at Amherst

78.     The inaccessible features at Quarry Lakes at Amherst include, but are not limited to:

a.      barriers at amenities provided onsite, such as the clubhouse, swimming pool, and mailbox kiosks, including; there is no accessible pedestrian route from covered multifamily dwelling units to the onsite amenities; the slopes on the walkway from the parking lot to the clubhouse are too steep for wheelchair users and other persons with disabilities to traverse safely; the threshold leading to the pool area is too high for wheelchair users and other persons with disabilities to traverse safely; there is a step up from the street to the mailbox kiosk with no curb cut; and mailboxes are mounted too high for wheelchair users to reach from a seated position;

b.      barriers in the routes leading to covered multifamily dwelling units, including slopes on the walkways that are too high for wheelchair users and other persons with disabilities to traverse safely;

c.      barriers within the common use areas of the clubhouse that make it difficult for wheelchair users and other persons with disabilities to use, including: the kitchen sink, counter and bar are too high to be used by wheelchair users from a seated position; the space under the kitchen sink is too narrow for wheelchair users to pull their knees under the sink so that they can use it; the built-in microwave is too high for wheelchair users to reach from a seated position; the toilets in the restrooms are not readily accessible to and usable by

wheelchair users because they are close to the sidewall; and the urinal in the men's restroom is too high to be used by wheelchair users.

## Reddington Village

79.     The inaccessible features at Reddington Village include, but are not limited to:

a.     barriers to amenities provided onsite, such as the clubhouse, swimming pool, and mailbox kiosks, including: there is no accessible route from covered multifamily dwelling units to the onsite amenities; the designated accessible parking space at the clubhouse has no access aisle, which is necessary so that wheelchairs users and other persons with disabilities have sufficient room to enter and exit their vehicles safely; there is knob-style hardware rather than lever-style hardware at the clubhouse entrance, which is difficult for persons with disabilities to grasp and open; the threshold at the clubhouse entrance is too high for wheelchair users and other persons with disabilities to traverse safely; and mailboxes are mounted too high for wheelchair users to reach from a seated position;

b.     barriers in the walkways leading to, and at, the entry doors of covered multifamily dwellings, including: one or more steps on the walkway; and slopes on the walkway that are too steep for wheelchair users and other persons with disabilities to traverse safely; and insufficient maneuvering space for wheelchair users at the entry doors, which makes it difficult or impossible for such persons to enter;

c.     barriers within the common use areas of the clubhouse, including: the kitchen sink and counter are too high to be used by wheelchair users from a seated position; the space under the kitchen sink is too narrow for wheelchair users to pull their knees under the sink so that they can use it; and there is insufficient clear floor space for wheelchair users at the urinal in the men's bathroom; and

d.      barriers within the covered multi-family dwelling units, including: thermostats are mounted too high and outlets are mounted too low for wheelchair users to reach from a seated position; the thresholds into the units are too high for wheelchair users and other persons with disabilities to traverse safely; the kitchens are too narrow for wheelchair users to maneuver about and use them; there is insufficient clear floor space beyond the swing of the door in the bathrooms for wheelchairs users to enter and close the door behind them; and there is insufficient clear floor space at the bathroom vanities for wheelchair users to approach and use the sink.

### The Sanctuary at Plum Brook

80.      The inaccessible features at The Sanctuary at Plum Brook include, but are not limited to:

a.      barriers at amenities provided onsite, such as the clubhouse, swimming pool, and mailbox kiosks, including: there is no accessible pedestrian route from covered multifamily dwelling units to the onsite amenities; and mailboxes are mounted too high for wheelchairs users to reach from a seated position; and

b.      barriers within the common use areas of the clubhouse, which make it difficult for wheelchair users and other persons with disabilities to use, including: the kitchen sink and counter are too high to be used by wheelchair users from a seated position; and the space under the kitchen sink is too narrow for wheelchair users to pull their knees under the sink so that they can use it.

### Springfield Ridge

81.      The inaccessible features at Springfield Ridge include, but are not limited to:

a. barriers at amenities provided onsite, such as the clubhouse, swimming pool, and mailbox kiosks, including: there is no accessible pedestrian route from covered multifamily dwelling units to the onsite amenities; there is no accessible parking at the clubhouse; the walkways leading to the mailbox kiosks have steps and slopes that are too steep for wheelchair users and other persons with disabilities to traverse safely; and mailboxes are mounted too high for wheelchairs users to reach from a seated position;

b. barriers in the routes leading to, and at, entry doors of covered multifamily dwelling units, including: slopes on walkways that are too steep for wheelchair users and other persons with disabilities to traverse safely; and thresholds at unit entries that are too high for wheelchair users and other persons with disabilities to traverse safely; and

c. barriers within the common use areas of the clubhouse which make it difficult for wheelchair users and other persons with disabilities to use, including: the kitchen sink and counter are too high to be used by wheelchair users from a seated position; the space under the kitchen sink is too narrow for wheelchair users to pull their knees under the sink so that they can use it; the built-in microwave and thermostats are mounted too high for wheelchair users to reach from a seated position; and the toilets in the restrooms are not readily accessible to and usable by wheelchair users because they are too close to the sidewall.

## <u>Village at Riverwalk</u>

82. The inaccessible features at Village at Riverwalk include but are not limited to:

a. barriers at amenities provided onsite, such as the clubhouse, swimming pool, fitness center, and mailbox kiosks, including: there is no accessible pedestrian route from covered multifamily dwelling units to the onsite amenities; the accessible parking at the clubhouse is not wide enough for wheelchair users and other persons with disabilities to enter

and exit their vehicles safely; slopes on the walkway from the parking area to the clubhouse are too steep for wheelchair users and other persons with disabilities to traverse safely; the threshold at the fitness center is too high for wheelchair users and other persons with disabilities to traverse safely; and mailboxes are mounted too high for wheelchairs users to reach from a seated position;

b.      barriers in the walkways leading to, and at, entry doors of covered multifamily dwelling units, including: slopes that are too steep for wheelchair users and other persons with disabilities to traverse safely; and thresholds that are too high for wheelchair users and other person with disabilities to traverse safely; and

c.      barriers  within the common use areas of the clubhouse, including: the kitchen sink, counter, and bar counter, are too high to be reached by wheelchair users from a seated position; the space under the kitchen sink is too narrow for wheelchair users to pull their knees under the sink so that they can use it; the built in microwave, internal message boxes, soap dispenser, and thermostats are mounted too high for wheelchair users to reach from a seated position; and there is insufficient clear floor space for wheelchair users at the urinal in the men's restroom.

## Village of Colonial Woods

83.      The inaccessible features at The Village of Colonial Woods include, but are not limited to:

a.      barriers at amenities provided onsite; such as the clubhouse, swimming pool, and mailbox kiosks, including; there is no accessible pedestrian route from covered multifamily dwelling units to the onsite amenities; there is no accessible parking at the clubhouse; there is

no accessible curb ramp from the parking to the walkway that leads to the clubhouse; and mailboxes are mounted too high for wheelchairs users to reach from a seated position;

b.       barriers in the routes leading to, and at, entry doors of covered multi-family dwelling units, including: one or more steps on walkways to units; knob-style hardware rather than lever-style hardware, which makes the doors difficult for persons with disabilities to grasp and open; and thresholds that are too high for wheelchair users and other person with disabilities to traverse safely;

c.       barriers within the common use areas of the clubhouse, including: the kitchen sink, counter, and bar are too high to be used by wheelchair users from a seated position; and the space under the kitchen sink is too narrow for wheelchair users to pull their knees under the sink so that they can use it; and

d.       barriers in covered multifamily dwelling units, including hall bathroom toilets that are not usable by wheelchair users because the toilet is too close to the sidewall.

## Villages of River Oaks

84.       The inaccessible features at The Villages of River Oaks include, but are not limited to:

a.       barriers at amenities provided onsite; such as the clubhouse, swimming pool, and mailbox kiosks, including: there is no accessible pedestrian route from units to the onsite amenities; the slope of the access aisle at the designated parking is too steep for wheelchair users and other persons with disabilities to travel safely between their vehicles and the walkway; the threshold leading to the pool is too high for wheelchair users and other persons with disabilities to traverse safely; there is insufficient maneuvering space for wheelchair users at the clubhouse entrance, which makes it difficult or impossible for such persons to

enter; and mailboxes are mounted too high for wheelchairs users to reach from a seated position;

      b.      barriers in the routes leading to, and at, entry doors of covered multifamily dwelling units, including: one or more steps between the unit driveway and the walkway to the unit entry; slopes on the route are too steep for wheelchair users and other persons with disabilities to traverse safely; the space outside entry doors to covered multifamily dwelling units is not readily accessible to and usable by wheel chair users and other persons with disabilities because it has insufficient maneuvering space and is not level; thresholds outside entry doors are too high for wheelchair users and other persons with disabilities to traverse safely;

      c.      barriers within the common use areas of the clubhouse, which make it difficult for wheelchair users and other persons with disabilities to use, including: the kitchen sink, counter, and bar are too high for wheelchair users to use from a seated position; the space under the kitchen sink is too narrow for wheelchair users to pull their knees under the sink so they can use it; the restroom toilets are not readily accessible to and usable by persons with disabilities because it is too far from the sidewall; there is insufficient clear floor space for wheelchair users at the urinal in the men's bathroom; and wall-mounted objects, including wall-mounted sconces, the fireplace mantle and the towel shelf, protrude too far into the circulation space of the clubhouse and could injure persons with visual disabilities; and

      d.      barriers in the covered multifamily dwelling units, including: thresholds leading into the units are too high for wheelchair users and other persons with disabilities to traverse safely; the kitchens lack sufficient maneuvering space for wheelchair users to use the sink; the bathrooms lack sufficient clear floor space beyond the swing of the door for wheelchair

users to enter the bathroom and close the door behind them; and there is insufficient clear floor space at bathroom vanities, toilets and showers for wheelchair users to use them; and thermostats are too high and outlets are too low for wheelchair users to reach from a seated position.

### Villas at Beavercreek

85.     The inaccessible features at Villas at Beavercreek include, but are not limited to:

a.      barriers to amenities provided onsite, such as the clubhouse, swimming pool, and mailbox kiosks, including: there is no accessible pedestrian route from covered multifamily dwelling units to the onsite amenities; there is a step at the side entrance to the clubhouse; the threshold at clubhouse main entrance is too high for wheelchair users and other persons with disabilities to traverse safely; and mailboxes are mounted too high for wheelchairs users to reach from a seated position;

b.      barriers in the routes leading to, and at, entry doors of covered multifamily dwellings, include slopes on the route that are too steep for wheelchairs users and other persons with disabilities to traverse safely; and

c.      barriers within the common use areas of the clubhouse, which make it difficult for wheelchair users and other persons with disabilities to use, including: the kitchen sink, counter, and bar are too high to be used by wheelchair users from a seated position; the space under the kitchen sink is too narrow to allow wheelchair users to pull their knees under the sink so that they can use it; and thermostats are mounted too high for wheelchair users to reach from a seated position.

### Villas at Benchrock

86.     The inaccessible features at Villas at Benchrock include, but are not limited to:

a.      barriers to amenities provided onsite; such as the clubhouse, swimming pool, park benches, and mailbox kiosks, including: there is no accessible pedestrian route from covered multifamily units to onsite amenities; there is no accessible parking at the clubhouse; and mailboxes are mounted too high for wheelchairs users to reach from a seated position;

b.      barriers in the routes leading to, and at, entry doors of covered multifamily dwellings, include slopes on walkways and driveways that are too steep for wheelchairs users and other persons with disabilities to traverse safely;

c.      barriers within the common use areas of the clubhouse, which make it difficult for wheelchair users and others persons with disabilities to use, including: the kitchen sink, counter, and bar are too high to be used from a seated position; and the space under the kitchen sink is too narrow to allow wheelchair users to pull their knees under the sink so that they can use it.

**Villas at Charleston Lake**

87.      The inaccessible features at Villas at Charleston Lake include, but are not limited to:

a.      barriers to amenities provided onsite; such as the clubhouse, swimming pool, park benches and mailbox kiosks, including lack of an accessible pedestrian route from units to the onsite amenities; there is no accessible curb ramp from the parking to the walkway that leads to the clubhouse; the thresholds at the clubhouse entrance and at the entrance to the pool are too high for wheelchair users and other persons with disabilities to traverse safely; and mailboxes are mounted too high for wheelchairs users to reach from a seated position;

b. barriers in the routes leading to, and at, entry doors of covered multifamily dwellings, including: slopes on walkways and driveways are too steep for wheelchairs users and other persons with disabilities to traverse safely; and

c. barriers within the common use areas of the clubhouse which make it difficult for wheelchair users and other persons with disabilities to use, including: the kitchen sink, counter, and bar are too high to be used by wheelchair users from a seated position; the space under the kitchen sink is too narrow to allow wheelchair users to pull their knees under the sink so that they can use it; the built in microwave and thermostats are mounted too high for wheelchair users to reach from a seated position; and there is insufficient clear floor space for wheelchair users at the urinal in the men's bathroom.

### Villas at Foor Farms

88. The inaccessible features at Villas at Foor Farms include, but are not limited to:

a. barriers to amenities provided onsite, such as the clubhouse, swimming pool, and mailbox kiosks, include there is no accessible pedestrian route from covered multifamily dwelling units to the onsite amenities;

b. barriers in the routes leading to, and at, entry doors of covered multifamily dwellings include slopes at transitions between walkways and driveways that are too steep for wheelchairs users and other persons with disabilities to traverse safely; and

c. barriers within the common use areas of the clubhouse, which make it difficult for wheelchair users and other persons with disabilities to use, include the kitchen sink and counter that are too high to be used by wheelchair users from a seated position.

### Villas at Hamilton West

89.     The inaccessible features at Villas at Hamilton West include, but are not limited to:

a.      barriers to amenities provided onsite; such as the clubhouse, swimming pool, and mailbox kiosks, including: there is no accessible pedestrian route from covered multifamily units to onsite amenities; and mailboxes are mounted too high for wheelchairs users to reach from a seated position; and

b.      barriers in the routes leading to, and at, entry doors of covered multifamily dwellings, including: slopes on walkways and driveways are too steep for wheelchairs users and other persons with disabilities to traverse safely.

**Villas at Milnor Crossing**

90.      The inaccessible features at Villas at Milnor Crossing include, but are not limited to:

a.      barriers to amenities provided onsite; such as the clubhouse, swimming pool, and mailbox kiosks, including: there is no accessible pedestrian route from covered multifamily units to onsite amenities; and mailboxes are mounted too high for wheelchairs users to reach from a seated position; and

b.      barriers within the common use areas of the clubhouse which make it difficult for wheelchair users and other persons with disabilities to use, including: the kitchen sink, counter, and bar are too high to be used by wheelchair users from a seated position; the space under the kitchen sink is too narrow to allow wheelchair users to pull their knees under the sink so that they can use it; and the thermostat is mounted too high for wheelchair users to reach from a seated position.

**Villas at Park Place**

91.     The inaccessible features at Villas at Park Place include, but are not limited to:

a.      barriers to amenities provided onsite; such as the clubhouse, swimming pool, and mailbox kiosks, including: there is no accessible pedestrian route from covered multifamily units to onsite amenities; the slope of the access aisle at the designated parking is too steep for wheelchair users and other persons with disabilities to travel safely between their vehicles and the walkway; and mailboxes are mounted too high for wheelchairs users to reach from a seated position;

b.      barriers in the routes leading to, and at, entry doors of covered multifamily dwellings, include slopes on walkways that are too steep for wheelchairs users and other persons with disabilities to traverse safely; and

c.      barriers within the common use areas of the clubhouse which make it difficult for wheelchair users and other persons with disabilities to use, include the kitchen sink, counter, and bar are too high to be used by wheelchair users from a seated position.

## Wellington Place

92.     The inaccessible features at Wellington Place include, but are not limited to:

a.      barriers to amenities provided onsite; such as the clubhouse, swimming pool, and mailbox kiosks, including: no accessible pedestrian route from covered multifamily units to onsite amenities; there is no designated accessible parking at the clubhouse; there is no accessible curb cut or curb ramp from the parking to the walkway that leads to the clubhouse; there is knob-style hardware rather than lever-style hardware at the pool gate, which makes it difficult for persons with disabilities to grasp and open; and mailboxes are mounted too high for wheelchairs users to reach from a seated position;

b.      barriers in the routes leading to, and at, entry doors of covered multifamily dwellings, including: raised concrete lips, thresholds and steps at unit front entrances are too high for wheelchair users and other persons with disabilities to traverse safely; and there is knob-style hardware rather than lever-style at unit front entrances, which makes it difficult for persons with disabilities to grasp and open;

c.      barriers within the common use areas of the clubhouse, which make it difficult for wheelchair users and other persons with disabilities to use, including: the kitchen sink and counter are too high to be used by wheelchair users from a seated position; the space under the kitchen sink is too narrow to allow wheelchair users to pull their knees under the sink so that they can use it; and

d.      barriers in covered multifamily dwelling units, including insufficient maneuvering space in bathrooms for wheelchairs users to enter the bathroom and close the door behind them or to use the sink.

**Woodland Run**

93.     The inaccessible features at Woodland Run include, but are not limited to:

a.      barriers to amenities provided onsite; such as the clubhouse, swimming pool, and mailbox kiosks, including: there is no accessible pedestrian route from covered multifamily units to onsite amenities; the designated accessible parking space is too narrow for wheelchair users and other persons with disabilities to travel safely between their vehicles and the walkway; there is no accessible curb cut from the parking to the walkway that leads to the clubhouse; the thresholds leading to the pool area is too high for wheelchair users and other persons with disabilities to traverse safely; and mailboxes are mounted too high for wheelchairs users to reach from a seated position;

b.      barriers in the routes leading to, and at, entry doors of covered multifamily dwellings, include slopes on walkways that are too steep, and thresholds at unit front entrances that are too high, for wheelchair users and other persons with disabilities to traverse safely; and

c.      barriers within the common use areas of the clubhouse which make it difficult for wheelchair users and other persons with disabilities to use, including: the kitchen sink, counter, and bar are too high to be used by wheelchair users from a seated position; the space under the kitchen sink is too narrow to allow wheelchair users to pull their knees under the sink so that they can use it; and the thermostat is mounted too high for wheelchair users to reach from a seated position.

## Woods on Wilkens

94.     The inaccessible features at Woods on Wilkens include, but are not limited to:

a.      barriers to amenities provided onsite; such as the clubhouse, swimming pool, and mailbox kiosks, including: there is no accessible pedestrian route from covered multifamily units to onsite amenities; there is no accessible curb cut from the parking to the walkway that leads to the clubhouse; and mailboxes are mounted too high for wheelchairs users to reach from a seated position; and

b.      barriers within the common use areas of the clubhouse which make it difficult for wheelchair users and other persons with disabilities to use, include the kitchen sink, counter, and bar are too high to be used by wheelchair users from a seated position.

## HUD Complaints and Charge of Discrimination

95.     Fair Housing Advocates Association, Inc. ("FHAA") is an Ohio nonprofit corporation with offices located in Akron, Ohio.  FHAA's organizational purposes are to

37

promote equal housing opportunities and eliminate illegal housing discrimination in the State of Ohio. In furtherance of its mission, the FHAA provides fair housing services including education and outreach.

96.     FHAA visited five of the Subject Properties and reported its observations to HUD. The FHAA diverted resources from its education and outreach work to investigate the allegations described herein.

97.     On or about October 26, 2011, January 24, 2012, and June 6, 2012, the FHAA filed timely administrative complaints with HUD, alleging that ECI and ECFI discriminated because of disability by failing to design and construct accessible multifamily dwellings.

98.     On October 12, 2012, HUD's Assistant Secretary for Fair Housing and Equal Opportunity filed a timely complaint housing discrimination complaint, as authorized by 42 U.S.C. § 3610(a)(1)(A)(i), alleging that ECI and ECFI discriminated because of disability by failing to design and construct accessible multifamily dwellings in violation of 42 U.S.C. §§ 3601-3631.

99.     Pursuant to 42 U.S.C. § 3610(a) and (b), the Secretary of HUD (the "Secretary") conducted and completed an investigation of the complaints referenced above, attempted conciliation without success and prepared a final investigative report. Based on the information gathered in the investigation, the Secretary, pursuant to 42 U.S.C. § 3610(g)(1) determined that reasonable cause existed to believe that ECI and ECFI violated the Fair Housing Act.

100.     On or about May 14, 2018, the Secretary issued a Charge of Discrimination, pursuant to 42 U.S.C. § 3610(g)(2), charging that ECI and ECFI violated 42 U.S.C. §§ 3604 (f)(1) and (f)(2) by making housing unavailable and discriminating in the terms and conditions or

provision of services or facilities because of disability because they did not design and construct the Subject Properties in accordance with the requirements of 42 U.S.C. § 3604(f)(3)(C).

101. On or about May 30, 2018, Complainant FHAA filed a timely Notice of Election with HUD, electing to have the claims asserted in the Charge of Discrimination decided in a civil action under 42 U.S.C. § 3612(a). Following this election, the Secretary authorized the Attorney General to file this action on the Complainants' behalf pursuant to 42 U.S.C. § 3612(o)(1).

102. The United States and the Defendants entered into successive agreements tolling the expiration of any statute of limitations in this action until October 18, 2019.

## COUNT I

103. Plaintiff realleges and incorporates by reference herein the allegations described in paragraphs 1 through 102 above.

104. The Defendants have failed to design or construct the covered multifamily dwellings at the Subject Properties in such a manner that:

a. the public use and common use portions of such dwellings therein are not readily accessible to and usable by persons with disabilities;

b. all the doors designed to allow passage into and within all premises within such dwellings are sufficiently wide to allow passage by persons with disabilities in wheelchairs; and

c. all premises within such dwellings contain the following features of adaptive design:

i. an accessible route into and through the dwellings;

ii. light switches, electrical outlets, thermostats, and other environmental controls in accessible locations; and/or

      iii.    usable kitchens and bathrooms such that an individual in a wheelchair can maneuver about the space.

105.    Defendants, through the actions described above, have

a.    discriminated in the rental of, or otherwise made unavailable or denied, dwellings to persons because of disability, in violation of 42. U.S.C. § 3604(f)(1);

b.    discriminated against persons in the terms conditions, or privilege of rental of a dwelling, or in the provision of services or facilities in connection with the rental of a dwelling, because of disability, in violation of 42 U.S.C. § 3604(f)(2); and

c.    failed to design and construct dwellings in compliance with the requirements of 42 U.S.C. § 3604(f)(3).

106.    FHAA is an "aggrieved person," as defined in 42 U.S.C. § 3602(i), and has suffered damages as a result of Defendants' conduct described above.

107.    Defendants' conduct described above was intentional, willful, and taken in disregard for the rights of others.

## COUNT II

108.    Plaintiff realleges and incorporates by reference herein the allegations described in paragraphs 1 through 107 above.

109.    The conduct of the Defendants described above constitutes:

a.    A pattern or practice of resistance to the full enjoyment of rights granted by the Fair Housing Act, 42 U.S.C. §§ 3601-3619; and/or

b.    A denial to a group of persons of rights granted by the Fair Housing Act, 42 U.S.C. §§ 3601-3619, which raises an issue of general public importance.

110.     In addition to the FHAA, there may be other victims of the Defendants' discriminatory housing practices who are aggrieved persons as defined in 42 U.S.C. § 3602(i) and may have suffered injuries and damages as a result of the Defendants' actions and practices described above.

## PRAYER FOR RELIEF

WHEREFORE, the United States prays that the Court enter an Order that:

1.     Declares that the Defendants' policies and practices, as alleged herein, violates the Fair Housing Act;

2.     Declares that the Defendants have engaged in a pattern or practice of discrimination in violation of the Fair Housing Act or have denied rights under the Fair Housing Act to a group of persons raising an issue of general public importance;

3.     Enjoins the Defendants, their officers, employees, agents, successors, and all other persons in active concert or participation with any of them, from:

   a.   Discriminating in the rental, or otherwise making unavailable or denying dwellings to renters, because of handicap in violation of  42 U.S.C. §3604(f)(1);

   b.   Discriminating against any person in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities in connection with such as dwelling, because of a handicap in violation of 42 U.S.C. § 3604(f)(2);

   c.   Failing or refusing to bring the Subject Properties, including covered multifamily dwelling units and public and common use areas, into compliance with 42 U.S.C. § 3604(f)(C)(3);

d.   Failing or refusing to take such affirmative steps as may be necessary to restore, as nearly as practicable, the victims of the Defendants' unlawful practices to the position they would have been in but for the discriminatory conduct;

e.   Designing and/or constructing any covered multifamily dwellings in the future that do not contain the accessibility and adaptability features required by 42 U.S.C. § 3604(f)(3)(C);

4.      Awards monetary damages under 42 U.S.C. §§ 3612(o)(3), 3613(c)(1) and 3614(d)(1)(B) to the FHAA, and to any other person harmed by the Defendants' discriminatory policies and practices.

The United States further prays for such additional relief as the interests of justice may require.

Dated: October 17, 2019

Respectfully submitted,

WILLIAM P. BARR
Attorney General

s/ Eric S. Dreiband_____

BENJAMIN C. GLASSMAN                    ERIC S. DREIBAND
United States Attorney                  Assistant Attorney General
Southern District of Ohio               Civil Rights Division

s/ Matthew J. Horwitz_____          s/ Sameena Sheena Majeed_____
MATTHEW J. HORWITZ (0082381)            SAMEENA SHEENA MAJEED
Assistant United States Attorney        Chief
United States Attorney's Office
Southern District of Ohio
221 E. Fourth Street, Suite 400         s/ Sara L. Niles_____
Cincinnati, OH 45202                    TIMOTHY J. MORAN
Tel. (513) 684-6823                     Deputy Chief
matthew.horwitz@usdoj.gov               SARA L. NILES
                                        Trial Attorney
                                        Housing and Civil Enforcement Section
                                        Civil Rights Division
                                        U.S. Department of Justice
                                        4 Constitution Square
                                        150 M Street, NE, Suite 8.119
                                        Washington, DC 20530
                                        Phone: (202) 514-2168
                                        sara.niles@usdoj.gov

                                        Attorneys for Plaintiff
                                        United States of America