IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA; | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:19-CV-4601 |
| | ) | |
| EPCON COMMUNITIES, LLC and EPCON | ) | |
| COMMUNITIES FRANCHISING, INC.; | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**CONSENT ORDER**

## I.  INTRODUCTION

1.    This Consent Order is entered between the United States of America and Defendants Epcon Communities, LLC and Epcon Communities Franchising, LLC, the successor of Epcon Communities Franchising, Inc. (collectively referred to hereafter as "Defendants").

2.    This action is brought by the United States to enforce provisions of Title VIII of the Civil Rights Act of 1968 ("the Fair Housing Act" or the "FHA") as amended, 42 U.S.C. § 3601 *et seq*.  This action is brought on behalf of Fair Housing Advocates Association ("FHAA"), pursuant to 42 U.S.C. § 3612(o), and is also brought pursuant to 42 U.S.C. § 3614(a).

3.    Specifically, the United States' Complaint alleges that Epcon Communities, LLC and Epcon Communities Franchising, Inc. engaged in a pattern or practice of discrimination against persons with disabilities by failing to design and construct covered multifamily dwellings at thirty-two (32) "Subject Properties" in Ohio listed in Appendix A with the features of accessible and adaptable design and construction required by the Fair Housing Act, 42 U.S.C. §§ 3604(f)(1), (f)(2) and (f)(3)(C).

## II.  DEFENDANTS

4.    Epcon Communities, LLC ("ECL") is an Ohio limited liability company, and has its principal place of business in Dublin, Ohio.  Epcon Communities, Inc. ("ECI") was converted into ECL in 2018.  ECI was founded in 1986, and after its founding, ECI developed residential communities in Ohio.  Notwithstanding the use of the term Defendants herein, neither ECL nor ECI were involved with the development of the Franchise Properties.  The parties hereto understand and agree that the claims of the United States against ECI and ECL related to the Corporate Properties and related to the Franchise Properties are separate and distinct.  As a matter of convenience, the United States has joined the claims against the two entities.  Notwithstanding this joinder, the provisions of this Consent Decree remain in all respects separate as they relate to the Corporate Properties and the Franchise Properties and any default in the performance of the provisions of this Consent Decree shall remain separate as it may relate to ECI, ECL, Epcon Communities Franchising, LLC, or Epcon Communities Franchising, Inc.

5.    The United States alleges that as the successor in interest to ECI, ECL participated in the design, construction, or design and construction as defined by the FHA of eleven (11) of the Subject Properties, known as the "Corporate Properties," and listed in Appendix A.

6.    Defendant Epcon Communities Franchising, Inc., an Ohio corporation founded in 1995 with its principal place of business in Dublin, Ohio, was converted into Epcon Communities Franchising, LLC in 2019.  Epcon Communities Franchising, Inc. and Epcon Communities Franchising, LLC are collectively referred to hereafter as "ECFI." Notwithstanding the use of the term Defendants herein, ECFI was not involved with the development of the Corporate Properties.

7.    The United States alleges that ECFI participated in the design, construction, or design and construction as defined by the FHA of twenty-one (21) of the Subject Properties, known as the "Franchised Properties," and listed in Appendix A through franchise agreements that it entered into with the franchisees for each property.  The United States further alleges that, through these franchise agreements, ECFI had the authority to control the design and construction of the Franchised Properties, including compliance with the accessibility requirements of the FHA, and it used that authority to, among other things review and approve site plans and architectural plans for the Franchised Properties.

## III.   RELEVANT REQUIREMENTS OF THE FAIR HOUSING ACT

8.    The FHA provides that, for non-elevator residential buildings with four or more dwelling units, all ground floor units that are designed and constructed for first occupancy after

March 13, 1991, are "covered units" and must include certain basic features of accessible and adaptable design to make such units usable by a person with a disability. 42 U.S.C. §§ 3604(f)(3)(C) and (f)(7)(B).

9.     The accessible and adaptable design provisions of the Fair Housing Act require for covered multifamily dwellings:  (a) the public use and common use portions of such dwellings are readily accessible to and usable by persons with a disability; (b) all the doors designed to allow passage into and within all premises within such dwellings are sufficiently wide to allow passage by persons with a disability using wheelchairs; (c) an accessible route into and through the dwelling; (d) light switches, electrical outlets, thermostats, and other environmental controls in accessible locations; (e) reinforcements in bathroom walls to allow later installation of grab bars; and (f) usable kitchens and bathrooms such that an individual using a wheelchair can maneuver about the space. 42 U.S.C. § 3604(f)(3)(C).  These features are referenced in this document as the "FHA Accessible Design Requirements."

10.    For the purposes of this Consent Order, the United States and the Defendants (the "Parties") agree that the Subject Properties were designed and constructed for first occupancy after March 13, 1991, and therefore, all the ground floor units in non-elevator buildings with four or more ground-floor dwelling units at the Subject Properties are "covered multifamily dwellings" within the meaning of the FHA, 42 U.S.C. § 3604(f)(7)(A) and (B).  As such, those units and the public and common use areas, including the accessible pedestrian routes at the Subject Properties, must comply with the Accessible Design Requirements of 42 U.S.C. § 3604(f)(3)(C).

## IV.    ALLEGED VIOLATIONS AT THE SUBJECT PROPERTIES

11.    The United States alleges that certain features at the Subject Properties fail to comply with the FHA Accessible Design Requirements including, but not limited to, the following:

(a) barriers to amenities provided onsite, such as a clubhouse, swimming pool, gazebo, and mailbox kiosks, including: lack of accessible pedestrian route from covered multifamily dwelling units to onsite amenities; slopes on existing walkways that are too steep for wheelchair users and other persons with disabilities to traverse safely; thresholds at clubhouse, pool, restroom, and fitness center entrances too high for wheelchair users and other persons with disabilities to traverse safely; knob-style hardware rather than lever-style hardware at pool gates, which makes it difficult for persons with disabilities to grasp and open; and mailboxes mounted too high for wheelchair users to reach from a seated position;

3

(b) barriers in the routes leading to, and at, entry doors of covered multifamily dwellings, including: steps leading to unit entries; slopes on walkways and driveways too steep for wheelchairs users and other persons with disabilities to traverse safely; insufficient clear floor space outside the entry doors, which make the entries difficult or impossible for wheelchair users to use; and exterior thresholds too high for wheelchair users and other persons with disabilities to traverse safely;

(c) barriers within the common use areas of the clubhouses, including: kitchen sinks, counters, and bars too high to be used by wheelchair users from a seated position; kitchen sinks too narrow to allow wheelchair users to pull their knees under the sink in order to use; toilets in the restrooms too close to the sidewall to allow wheelchair users to access the toilet; built-in microwaves and thermostats mounted too high for wheelchair users to reach from a seated position; insufficient clear floor space for wheel chair users at the urinals in the men's restrooms; and wall-mounted objects, including wall-mounted sconces, the fireplace mantel, and a towel shelf, protrude too far into the circulation space and could injure persons with visual disabilities; and

(d) barriers in covered multifamily dwelling units, including: thermostats mounted too high for wheelchair users to reach from a seated position; outlets mounted too low for wheelchair users to reach from a seated position; thresholds leading into the units too high for wheelchair users and other persons with disabilities to traverse safely; insufficient maneuvering space in kitchens in covered multifamily dwelling units to allow wheelchair users to use the sinks; and insufficient maneuvering space that would allow wheelchairs users to enter the bathroom and close the door behind them or to use the sink.

## V. CONSENT OF THE PARTIES TO ENTRY OF THIS ORDER

12.     The Parties agree that this Court has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. §§ 1331 and 1345 and 42 U.S.C. § 3614(a).  The parties further agree that this controversy should be resolved without further proceedings and without an evidentiary hearing or trial.

13.     The Defendants, ECI, and ECFI deny that they violated the FHA, ADA, or any other federal, state, or local statute or regulation that prohibits discrimination. The Defendants and ECI also deny any and all allegations made by the United States in the Complaint and this Consent Order.  The Defendants, ECI, and ECFI also deny that ECI or ECFI participated or was in any way involved in the design and construction, as those terms are defined by the FHA, of any of the Franchised Properties.  Notwithstanding the obligations to which Defendants have agreed and are obligated to perform under this Order, Defendants, ECI, and ECFI also deny that ECI, ECL, or ECFI has the right to control or actually exercises control over any obligations or

4

responsibilities imposed on any homeowners association or franchisee by the terms of its franchise agreement or any other agreement with ECFI. Defendants, ECI, and ECFI agree to the terms of this Consent Order resolving this action filed by the United States solely to avoid the time and significant cost of litigation. Nothing herein shall be construed as a finding of any noncompliance with the FHA, ADA, UFAS, or any other federal, state, or local statute or regulation. The terms of this Consent Order, upon the effectiveness hereof, are intended to fully resolve all allegations of the United States made herein and under the Complaint.

14.     The United States hereby releases any and all claims and covenants and agrees that it will forever refrain from instituting, maintaining, prosecuting, or continuing to maintain or prosecute any suit or action or proceeding under the FHA pertaining to the design and construction of the Subject Properties against the Defendants, and Defendants' parent entities, subsidiaries, franchisees and affiliates, as well as the officers, directors, members, partners, managers, trustees, employees of those entities, including in their individual capacity, except that nothing in this paragraph shall prevent the United States from fulfilling its obligations for election of individual complaints under 42 U.S.C. § 3612(o). This paragraph shall survive the expiration of this Consent Order.

15.     As indicated by the signatures appearing below, the parties have agreed to the entry of this Consent Order.

Based on the Court's review of the record and with the agreement of the parties, the Court orders as follows:

## VI.     GENERAL INJUNCTION

16.     The Defendants, and each of their officers, employees, agents, successors, and assigns, and all other persons in active concert or participation with them, are enjoined from discriminating on the basis of disability as prohibited by the Fair Housing Act, 42 U.S.C. § 3604(f).

## VII.     RETROFITS AT THE SUBJECT PROPERTIES

17.     The United States, as set forth herein and in its Complaint, alleges that the Subject Properties do not meet the accessibility requirements of the Fair Housing Act and HUD's Fair Housing Accessibility Guidelines ("FHA Guidelines"), 24 C.F.R. Ch. I., Subch. A, App. IV. Defendants deny these allegations, but agree to address the United States' allegations. Defendant ECL, in accordance with the FHA and the FHA Guidelines, shall perform the actions and retrofits described in this Section, and in Appendices B-1 and B-2, at the Corporate Properties listed in Appendix A under the terms and limitations set forth in this Section and in Appendix K. Defendant ECFI, in accordance with the FHA and the FHA Guidelines, shall

perform the actions related to the retrofits described in this Section, and in Appendix B-2 and B-3, at the Franchised Properties listed in Appendix A under the terms and limitations set forth in this Section and in Appendix K. In the event of a conflict between the Consent Order and an Appendix regarding retrofits, the respective Appendix shall control.

18.     All retrofits shall be completed in conformity with applicable state and local regulations regarding building construction, repairs, and improvements, with Defendants being responsible for requiring any contractors to obtain all building permits, inspections, and other permissions required by the relevant state and local governmental agencies (including payment of all permit and/or inspection fees). The workmanship, construction materials, and hardware used for all retrofits required by this Order shall be reasonably consistent with and equivalent to that which is being replaced. All retrofits shall be completed in a professional and workmanlike manner consistent with generally accepted construction standards for multifamily dwellings.

19.     Defendants shall cause to be paid a total of **TWO MILLION TWO HUNDRED THOUSAND DOLLARS and 00/100 ($2,200,000.00)** in three installments into an interest bearing escrow account that Defendants establish as an accessibility retrofit fund ("Retrofit Fund") from which Defendants may withdraw funds to pay for retrofits as required under this Order in the following manner:

a.      Within ninety (90) days of the entry of this Order, Defendants will cause to be paid **FOUR HUNDRED THOUSAND DOLLARS ($400,000.00)** into the account;

b.      Within one hundred eighty (180) of the entry of this Order, Defendants will cause to be paid **EIGHT HUNDRED THOUSAND DOLLARS ($800,000.00)** into the account; and

c.      Within one (1) year of the entry of this Order, Defendants will cause to be paid **ONE MILLION DOLLARS ($1,00,000.00)** into the account.

20.     Defendants shall use the Retrofit Fund for the purpose of paying for retrofits made pursuant to this Order at the Corporate and Franchised Properties. Defendants shall submit proof to the United States that the Retrofit Fund account has been established and the funds deposited within thirty (30) days of each payment outlined in this paragraph.

21.     The retrofits performed under this Agreement must be completed in the manner and order specified by Appendix K using funds from the Retrofit Fund to pay for the expenses charged by the third party contractors that are retained to carry out such retrofits. The Defendants will not be reimbursed from the Retrofit Fund for the salaries or any other

administrative, supervisory, or management costs associated with its employees. All payments made from the Retrofit Fund must be approved by the United States pursuant to the procedures set forth in this Order. Defendants' obligation to approve or pay for retrofits at the Subject Properties shall cease when they have exhausted the funds in the Retrofit Fund and Defendants shall not thereafter be required to pay for any additional retrofits to the Subject Properties regardless of unmet priorities, as outlined in Appendix K, and/or any request by a homeowners association or homeowner at the Subject Properties.

### A.   <u>Accessible and Usable Public and Common Use Areas</u>

22.     Within ninety (90) days of the entry of this Order, the respective Defendants shall distribute, or ensure to have distributed, to each homeowners association at the Subject Properties a notice substantially equivalent to Appendix C informing it that the Defendants have agreed to make certain retrofits to the public and/or common use areas as required by this Order and requesting permission to enter the property to survey the property and develop a concept plan of what specific retrofits may be made to the property. The Defendants shall certify to the United States in writing that the notices have been distributed and the manner in which they were distributed within ten (10) days after such distribution. The Defendants shall make good faith efforts to access and survey each of the Subject Properties within ninety (90) days of the homeowners association granting access to survey the property.

23.     Within ninety (90) days of accessing and surveying a subject property, the Defendants shall distribute, or ensure to have distributed, to the United States for approval a copy of the concept plan for retrofitting the public and common use area at that property. The United States shall notify Defendants of the approval or denial of each concept plan within thirty (30) days of receipt of the concept plan. If the United States fails to respond within thirty (30) days of receipt of the concept plan, such concept plan shall be deemed approved. Within fifteen (15) days of the United States' approval of the concept plan, Defendants shall distribute, or ensure to have distributed, the concept plan to the relevant homeowners association for approval. Defendants will notify the United States should a homeowners association not approve the relevant concept plan within ninety (90) days of receipt of such plan, or if they have reason to believe before that time that the homeowners association will not approve the concept plan.

24.     Within sixty (60) days of the approval of a concept plan by a homeowners association of any of the Phase 1 properties, as outlined in Appendix K, Defendants shall obtain at least two bids from third parties unrelated to the Defendants for the completion of the retrofit work at that Phase 1 property. Upon receipt of the bids, Defendants shall submit the same to the United States for review of bids and scope of retrofits to be performed as well as for approval to pay for the retrofits from the Retrofit Fund. Defendants' submissions will include their recommendation regarding which bidder should be awarded the work. The United States shall

notify Defendants of the approval or denial of the bids within thirty (30) days of receipt of the bids. If the United States fails to respond within thirty (30) days of receipt of the bids, such recommended bids shall be deemed approved. As outlined in Appendix K, the Defendants' solicitation of bids for the Phase 2 properties will begin once the United States has approved the retrofit budgets and scope of retrofits to be completed at each of the Phase 1 properties.

25.     Defendants will make a good faith effort to complete the retrofits at the Corporate and Franchised Properties as set forth in this document and in Appendices B-1 and B-3 compliant with the FHA and the FHA Guidelines in accordance with the parameters outlined in Appendix K, as approved by the homeowners association (or as required by the Court if the United States seeks an order compelling retrofits under Paragraph 26) as soon as practical, but not more than thirty (30) months from the date of the entry of this Consent Order. The Defendants shall pay all expenses associated with these modifications out of the Retrofit Fund and have sole authority to make payments for work as it is completed consistent with its normal payment practices. Defendants shall attempt, in good faith, to minimize any inconvenience to the residents of the Subject Properties.

26.     The Defendants will make good faith efforts to secure access to the Subject Properties for the purpose of planning, evaluating, and performing any action required under this Order to retrofit elements in the public and common use areas and the unit interiors as required herein. If a homeowners association at a Subject Property does not reply within thirty (30) days to the notices provided for in paragraph 22, refuses to allow the Defendants access to a Subject Property, does not approve the concept plan for the retrofits, or otherwise refuses to allow the Defendants to make retrofits, Defendants shall notify the United States of such failure to reply and/or refusal as soon as practicable, and the United States may seek an order from the Court requiring that homeowners association to allow such access or adding the homeowners association as Necessary or Indispensable Parties under Rule 19 of the Federal Rule of Civil Procedure. The Defendants shall not object to the United States seeking such an order from the Court.

**B.     Retrofit to Unit Interiors**

27.     Within ninety (90) days of the entry of this Order, the Defendants shall inform each person or entity who owns a covered unit at the Subject Properties, in a form set out in Appendix D, that: (1) the Defendants have agreed to pay for the retrofit of certain features of the covered dwelling to make them more accessible; (2) the features of accessible and adaptive design can be retrofitted in the unit upon request of the homeowner; (3) the retrofits offered will be at no cost to the homeowner; and (4) the scheduling of the retrofits will take into account the preferences and convenience of the homeowners and tenants and that relocation costs as defined in this Order, if any, will be provided in advance. Such notice shall also be distributed within

ninety (90) days after the entry of the Order, as well as on the first anniversary of the entry of the Order, unless and until such time as the Unit Interior Retrofit Fund, as outline in Appendix K, has been exhausted. The Defendants shall certify to the United States in writing that the notices have been distributed and the manner in which they were distributed within thirty (30) days after such distribution.

28. If the Defendants receive a request from a homeowner of a covered dwelling unit to perform the retrofits, that Defendant shall:

    i. No later than thirty (30) days of receipt of the request, approve or disapprove of the requested retrofits and give the homeowner the written authority to obtain a bid to complete the retrofits;

    ii. Within thirty (30) days of receiving the bid from the homeowner, the Defendants shall provide the bid to United States for review and approval. The United States shall notify Defendants of the approval or denial of the bids within thirty (30) days of receipt of the bids and, if the United States fails to respond within thirty (30) days of receipt of the bids, such bids shall be deemed approved;

    iii. Upon approval by the United States, provide written authorization to complete the work as stated in the bid; and

    iv. Within thirty (30) days of proof of completion of the retrofits, pay all invoices for the completion of such work as stated in the bid.

29. In the event that a resident of a unit scheduled to undergo a modification is required because of the nature of the retrofit to vacate the unit for more than twenty-four (24) hours consecutively, the Defendants shall pay such resident the applicable government per diem rate for food and lodging in local area for each day of undue inconvenience or hardship. Such payment shall be made prior to the commencement of any retrofit work on the resident's unit, so that the resident may use the money to obtain alternative living accommodations while dislocated.

30. If a Defendant does not approve of a retrofit(s) requested by a homeowner or the bid for completion of the work, it shall provide written notice to the United States of the reasons for such denial within thirty (30) days of the decision not to approve. The United States may provide a written demand to the relevant Defendant to pay for the requested retrofit(s) if it believes the request is reasonable, falls within the elements listed in Appendix B-2, and there are sufficient funds remaining in the Unit Interior Retrofit Fund, as outlined in Appendix K, to complete such retrofits. If after receiving the demand from the United States, the Defendant

continues to believe the request is unreasonable, does not fall within the elements listed in Appendix B-2, or there are insufficient funds remaining in the Unit Interior Retrofit Fund to pay for such retrofits, it may file a motion with the Court requesting relief from paying for such retrofit.

31.     Any money remaining in the Unit Interior Retrofit Fund, as defined in Appendix K, at the time that the actions and obligations in paragraphs 27-30, above, are complete shall be deposited into the general Retrofit Fund.

## VIII.   NEUTRAL INSPECTION OF RETROFITS

32.     The respective Defendants will enter into a contract with a neutral inspector approved by the United States ("Inspector") to conduct on-site inspections of the public and common use area and any interior retrofits that have been performed at the Subject Properties as of the date of the inspection to determine if they have been completed in accord with the specifications in this Order and Appendices B-1, B-2, and/or B-3.  Such Inspector shall have expertise in the design and construction requirements of the Fair Housing Act and the requirements of the FHA Guidelines.

33.     The respective Defendants agree to work with the homeowners associations for each of the Subject Properties to ensure that the inspections provided for in this Section of the Order occur.

34.     Inspection of the retrofits to the accessible pedestrian routes may take place as work is completed at a Subject Property and payments are made for such work, but no later than thirty (30) days of the completion of all of the retrofits to all of the accessible pedestrian routes at the subject property or as soon thereafter as practicable for each.  Defendants will give the United States at least two (2) weeks' notice of the inspection and will give the United States an opportunity to have its representative present for the inspection.

35.     The inspections of accessible pedestrian routes, public and common use areas, and dwelling units will be conducted by the Inspector in accordance with this Consent Order and the relevant Appendices.

36.     The Inspector will set out the results of each inspection of the retrofits of a Subject Property, including deficiencies, if any, in writing, and shall send that report to Counsel for the United States[3] and to Defendants.  The Inspector will take digital photographs of any

---

[3]  For purposes of this Order, all reports should be sent to:  Chief, Housing and Civil Enforcement Section, Civil Rights Division, United States Department of Justice, 150 M Street,

deficiencies identified at each Subject Property. If the inspection indicates that not all the required retrofits have been made as specified in the Appendices that apply to a Subject Property, Defendants will have any deficiencies corrected within ninety (90) days and will pay for another inspection by the same Inspector to certify the deficiencies have been corrected. This process shall continue until the Inspector certifies that all of the necessary modifications have been made.

37. The Defendant involved in that specific property shall pay all of the Inspector's reasonable costs associated with the inspection for such property out of the Retrofit Fund, and such payments shall be made without regard to the Inspector's findings.

## IX. CIVIL PENALTY

38. Within thirty (30) calendar days of the effective date of this Order, Defendants shall pay a total of **FIFTY ONE THOUSAND THREE HUNDRED THREE DOLLARS ($51,303.00)** to the United States Treasury as a civil penalty pursuant to 3614(d)(1)(c) to vindicate the public interest by electronic funds transfer pursuant to written instructions provided by counsel for the United States. This payment shall be in the form of an electronic funds transfer pursuant to written instructions to be provided by the United States. The civil penalty is a debt for a fine, penalty, or forfeiture payable to and for the benefit of the United States within the meaning of 11 U.S.C. § 523(a)(7), and is not compensation for actual pecuniary loss. No Defendant shall seek to discharge any part of this debt in bankruptcy.

## X. SETTLEMENT PAYMENTS

39. Within thirty (30) days after the entry of this Order, the Defendants shall pay the Fair Housing Advocates Association (FHHA) the sum of **FORTY THOUSAND DOLLARS ($40,000.00)** conditioned on the FHAA's execution of a release in the form set out in Appendix E.

40. Defendants shall cause to be paid a total of **THREE HUNDRED THOUSAND DOLLARS and 00/100 ($300,000.00)** in two installments into an interest bearing escrow account that the Defendants establish as a settlement fund from which Defendants may pay monetary damages to any aggrieved persons who may have suffered damages as a result of the alleged discriminatory housing practices by Defendants (hereinafter referred to as the "Settlement Fund") in the following manner:

---

NE – Suite 8.119, Washington, D.C. 20530, Attn: DJ# 175-58-257, or as otherwise directed by the United States.

a.     Within ninety (90) days of the entry of this Order, Defendants will cause to be paid **ONE HUNDRED THOUSAND DOLLARS ($100,000.00)** into the account; and

b.     Within one hundred eighty (180) of the entry of this Order, Defendants will cause to be paid **TWO HUNDRED THOUSAND DOLLARS ($200,000.00)** into the account.

Any interest accruing to the Settlement Fund shall become a part of the Settlement Fund and be utilized as set forth in this document. Defendants shall submit proof to the United States that the Settlement Fund account has been established and the funds deposited within thirty (30) days of each payment outlined in this paragraph.

41.     Within sixty (60) days of the entry of this Order, the Defendants shall publish the Notice to Potential Victims of Housing Discrimination ("Notice") at Appendix G informing readers of the availability of compensatory funds. The Notice shall be no smaller than three columns by six inches and shall be published on three occasions in the news section of general circulation newspapers serving each locality in which a Subject Property is located. The publication dates in each newspaper shall be separated from one another by at least twenty-one (21) days, and at least two of the publication dates shall be a Sunday. Within ten (10) days of each publication date, the Defendants shall submit a copy of each of the newspapers containing the Notice to counsel for the United States.

42.     Within sixty (60) days of the entry of this Order, the Defendants shall send a copy of the Notice to the organizations listed in Appendix H.

43.     Within six (6) months of the entry of this Order, the Defendants shall send by first-class mail, postage prepaid, a copy of the Notice to each current owner of homes at the Subject Properties. Within seven (7) months of entry of this Order, the Defendants shall provide to counsel for the United States certification or proof that the Notice has been sent.

44.     The United States shall investigate the claims of allegedly aggrieved persons and make a determination of which persons are aggrieved and whether any amount of damages should be paid to each such person. The determinations of the appropriate amount of damages shall total no more than the amount of the Settlement Fund in the aggregate. The Defendants agree that the determinations of the United States shall be final, and the Defendants hereby waive the right to contest the United States' determination in this or any other proceeding. The Defendants agree as part of this Consent Order that they will not seek to interfere with or oppose

the United States' determinations regarding the aggrieved persons and the appropriate amount of damages paid to each.

45.     Within thirty (30) days of the United States' final determination, Defendants shall deliver to the United States checks drawn on the settlement fund account made payable to the allegedly aggrieved persons in the amounts determined by the United States.  In no event shall the aggregate of all such checks exceed the sum of the Settlement Fund, including accrued interest.  No aggrieved person shall be paid until he/she has executed and delivered to counsel for the United States the release at Appendix F.

46.     After the satisfaction of Paragraphs 40-45 above, any money remaining in the Settlement Fund, including interest, shall be paid into the Retrofit Fund described in Section VII, above.

47.     Defendants shall permit the United States, upon reasonable notice, to review any records reasonably related to its determinations regarding the claims of alleged aggrieved persons.

48.     Nothing in this Order shall preclude the United States from making its own efforts to locate and provide notice to potential aggrieved persons.

## XI.     NON-DISCRIMINATION IN FUTURE DESIGN AND CONSTRUCTION

49.     Defendants will take all actions to make the design and construction of any covered multifamily dwelling commenced after the date of entry of this Consent Order fully compliant with the Accessible Design Requirements of the Fair Housing Act and the FHA Guidelines.

50.     Each Defendant will ensure that all plans, guidance, and policies applicable to covered multifamily dwellings that it uses, provides to and/or approves to be used by its franchisees, will comply with the Accessible Design Requirements of the Fair Housing Act. Pursuant to this provision, site plans, sample site plans, and site guidance, if any, provided to and/or approved for use by Defendant ECFI for franchisees, will indicate that accessible pedestrian routes are to be provided from all covered unit entrances to all site amenities. Notwithstanding the obligations to which Defendants have agreed and are obligated to perform under this Order, Defendants and ECI deny that ECL, ECI, or ECFI reviewed or had control over site plans for the Franchisee Properties under the terms of any franchise agreement or any other agreement with ECFI.

51.     Within one hundred twenty (120) days of the entry of this Order, Defendant, ECFI, shall make the revisions, if any, to the standard plans, guidance and policies it provides to

franchisees to comply with paragraph 50, above, and shall submit those materials to the United States for comment and approval. The United States shall notify Defendants of the approval or disapproval of the revisions within thirty (30) days and if the United States fails to respond within thirty (30) days, such revisions shall be deemed approved.

52.     If Defendants revise any plans, guidance, and policies that would impact the accessibility requirements applicable to covered multifamily dwellings during the term of this Order, Defendants shall submit those materials to the United States for comment and approval and the United States shall have thirty (30) days to review and approve. If the United States fails to respond within thirty (30) days, any revisions shall be deemed approved.

53.     Defendant ECL shall maintain, and provide to the United States, the following information and statements regarding any covered multifamily dwellings that are currently being, or intended to be, developed, built, and/or designed in whole or in part, by either of them or by any entities in which they have a position of control as an officer, director, or member, or have a fifty-percent (50%) or larger ownership share:

    a.    the name and address of the project;

    b.    a description of the project and the individual units;

    c.    all architectural and engineering plans either Defendant has used and/or reviewed for the project;

    d.    the name, address, and telephone number of the civil engineer(s) involved with the project;

    e.    a statement from the civil engineer(s) involved with the project acknowledging his/her knowledge of the Accessible Design Requirements of the FHA, 42 U.S.C. § 3406(f)(1), (f)(2), and (f)(3)(C), the requirements of the FHA Guidelines, and certifying that he/she has reviewed the engineering documents for the project and that the design specifications therein fully comply with the requirements of the Fair Housing Act and the FHA Guidelines in a form set out in Appendix E;

    f.    the name, address and telephone number of the architect(s) involved with the project;

    g.    a statement from the architect(s) involved with the property acknowledging his/her knowledge of the Accessible Design Requirements of the FHA, 42 U.S.C. § 3406(f)(1), (f)(2), and (f)(3)(C), the requirements of the FHA Guidelines, and certifying that he/she has reviewed the architectural plans for the property and that the design specifications therein fully comply with the requirements of the Fair Housing Act, and the FHA Guidelines in a form set out in Appendix E; and

    h.    if the engineering documents or architectural plans are revised, and the revisions could have any impact on the accessibility of the dwellings or complex, the Defendant, ECL, shall obtain and maintain (and provide to the United States upon request) a statement from the site engineer or architect, as applicable, that all

specifications in the revised engineering documents or architectural plans, as pertinent, comply with the requirements of the Fair Housing Act and the Fair Housing Accessibility Guidelines in a form set out in Appendix E.

54.     Defendant ECFI shall require from the franchisee and provide to the United States the following information and statements regarding any covered multifamily dwellings where the commencement of the development, construction, or design of the covered multifamily dwelling pursuant to a franchise agreement commenced after the date of entry of this Consent Order:

a.      the name and address of the project;

b.      a description of the project and the individual units;

c.      all architectural and engineering plans either Defendant has reviewed for the project;

d.      the name, address, and telephone number of the civil engineer(s) involved with the project;

e.      a statement from the civil engineer(s) involved with the project acknowledging his/her knowledge of the Accessible Design Requirements of the FHA, 42 U.S.C. § 3406(f)(1), (f)(2), and (f)(3)(C), the requirements of the FHA Guidelines, and certifying that he/she has reviewed the engineering documents for the project and that the design specifications therein fully comply with the requirements of the Fair Housing Act and the FHA Guidelines in a form set out in Appendix E;

f.      the name, address and telephone number of the architect(s) involved with the project;

g.      a statement from the architect(s) involved with the property acknowledging his/her knowledge of the Accessible Design Requirements of the FHA, 42 U.S.C. § 3406(f)(1), (f)(2), and (f)(3)(C), the requirements of the FHA Guidelines, and certifying that he/she has reviewed the architectural plans for the property and that the design specifications therein fully comply with the requirements of the Fair Housing Act, and the FHA Guidelines in a form set out in Appendix E; and

h.      if the engineering documents or architectural plans are revised, and the revisions could have any impact on the accessibility of the dwellings or complex, the Defendant ECFI shall obtain and maintain (and provide to the United States upon request) a statement from the site engineer or architect, as applicable, that all specifications in the revised engineering documents or architectural plans, as pertinent, comply with the requirements of the Fair Housing Act and the Fair Housing Accessibility Guidelines in a form set out in Appendix E.

If the franchisee refuses to provide such information, Defendant ECFI will advise the United States of such refusal.

## XII.  EDUCATIONAL PROGRAM

55.     Within ninety (90) days of the entry of this Order, the Defendants shall provide a copy of this Order to all their agents, employees, and franchisees involved in the design and/or construction of covered multifamily dwellings, and shall secure a signed statement from each agent, employee or franchisee acknowledging that he or she has received and read the Order, and had an opportunity to have questions about the Order answered.  This statement shall be substantially in the form of Appendix I.

56.     During the term of this Order, within thirty (30) days after the date he or she commences an agency, employment, or franchise relationship with one of the Defendants, each new agent, employee or franchisee involved in the design and/or construction of covered multifamily dwellings shall be given a copy of this Order and be required to sign the statement acknowledging that he or she has received and read the Order, and had an opportunity to have questions about the Order answered.  This statement shall be substantially in the form of Appendix I.

57.     The Defendants shall also require that their respective employees who have supervisory authority over the design and/or construction of covered multifamily dwellings have a copy of, are familiar with, and personally review, the Fair Housing Accessibility Guidelines, 56 Fed. Reg. 9472 (1991) and the United States Department of Housing and Urban Development, Fair Housing Act Design Manual, *A Manual to Assist Builders in Meeting the Accessibility Requirements of the Fair Housing Act*, (August 1996, Rev. April 1998).

58.     Defendant ECFI shall provide to its franchisees who commence construction of covered multifamily dwellings after the date of this Order a copy of the Fair Housing Accessibility Guidelines, 56 Fed. Reg. 9472 (1991) and the United States Department of Housing and Urban Development, Fair Housing Act Design Manual, *A Manual to Assist Builders in Meeting the Accessibility Requirements of the Fair Housing Act* (August 1996, Rev. April 1998).

59.     Within one-hundred twenty (120) days of the date of entry of this Consent Order, and annually thereafter during the term of this Consent Order, Defendants and all of their respective employees whose duties, in whole or in part, involved management authority over the development, design and/or construction of the multifamily dwellings at issue in this case shall undergo training on the design and construction requirements of the Fair Housing Act. Defendant ECFI shall provide franchisees the opportunity to attend such training.  A qualified third party, unconnected to Defendants or their employees or agents, shall conduct the training, and any expenses associated with this training shall be borne by the Defendants.  The Defendants have provided to the United States the name, address, and telephone number of the trainer;

copies of the training outlines and the materials that will be distributed by the trainer. Within thirty (30) days after the training, the Defendants shall provide to the United States copies of the certifications executed by all Defendants and covered employees, agents, and franchisees confirming their attendance, in a form substantially equivalent to Appendix J. If the Defendants and their employees and agents have completed such training within one (1) year prior to the entry of this Consent Order, the Defendants may submit the same information to the United States for such training and the United States may deem such training to satisfy the requirements of this Paragraph.

## XIII.   NOTICE OF DEFENDANTS' NON-DISCRIMINATION POLICY

60.     Within thirty (30) days of the date of entry of this Consent Order, and for the duration of this Order, the Defendants shall post and prominently display in the sales offices for all covered multifamily dwellings owned or operated by them, a sign no smaller than 10 by 14 inches indicating that all dwellings are available for sale or rental on a nondiscriminatory basis. A poster that comports with 24 C.F.R. Part 110 will satisfy this requirement.

61.     For the duration of this Consent Order, in all future advertising conducted by Defendants in newspapers, and on pamphlets, brochures and other promotional literature regarding covered multifamily dwellings, the Defendants shall place, in a conspicuous location, a statement that the dwelling units include the features for persons with disabilities required by the federal Fair Housing Act.

## XIV.   NOTIFICATION AND DOCUMENT RETENTION REQUIREMENTS

62.     In addition to all other reporting requirements herein, within one hundred eighty (180) days after the date of entry of this Consent Order, Defendants shall submit to the United States an initial report regarding the requirements of Section VII, and containing the signed statements specified in paragraphs 51-53 and 58 of this Order. Thereafter during the term of this Order, Defendants will, on a semi-annual anniversary of the entry of this Consent Order, submit to the United States a compliance report detailing the retrofitting and inspections of the retrofits at the Subject Properties under Sections VII–VIII. In addition, each year, on the anniversary of the entry of this Order, the Defendants will submit to the United States a report concerning the requirements in paragraphs 51-53 and 58 concerning the future design and construction, the educational and notice requirements of the Order, and containing the signed statements in accordance with paragraphs 51-53 and 58 of this Consent Order, except that the last compliance report will be due sixty (60) days prior to the expiration of the Consent Order.

63.     For the duration of this Order, Defendants shall advise the United States in writing within fifteen (15) days of receipt of any written or oral administrative or legal fair

housing complaint against any property owned, managed, or against any employees, or agents of the Defendants working at or for any such property, regarding discrimination on the basis of disability, or regarding retaliation, in housing.  Upon reasonable notice, the Defendants shall also provide the United States all information it may request concerning any such complaint.  The Defendants shall also notify the United States in writing within fifteen (15) days of the resolution of any such complaint.

64.     For the term of this Consent Order, Defendants are required to preserve all records related to this Consent Order for all covered multifamily dwellings designed, constructed, or owned by them.  Upon reasonable notice to the Defendants, representatives of the United States shall be permitted to inspect and copy any records of the Defendants or inspect any developments or residential units under the Defendants' control bearing on compliance with this Consent Order at any and all reasonable times, provided, however, that the United States shall endeavor to minimize any inconvenience to Defendants from such inspections.

## XV.    COMPLIANCE TESTING

65.     The United States may take steps to monitor the Defendants' compliance with this Consent Order including, but not limited to, by conducting fair housing tests at any location(s) in which the Defendants' employees, agents are involved in the design and/or construction of covered multifamily dwellings.

## XVI.    TERMINATION OF LITIGATION HOLD

66.     The Parties agree that, as of the date of this Consent Order, litigation is not "reasonably foreseeable" concerning the matters described above or in the United States' Complaint.  To the extent that any Party previously implemented a litigation hold to preserve documents, electronically stored information (ESI), or things related to the matters described above, the Party is no longer required to maintain such litigation hold.  Nothing in this paragraph relieves any Party of any other obligations imposed by this Order.

## XVII.    DURATION AND TERM

67.     This Consent Order will remain in effect for three (3) years after the date of its entry, or until all of the actions required of the Defendants herein are completed, whichever is later.  Defendants shall submit, on the third anniversary of the entry of this Order, a report to the Court and the United States describing any unmet obligations and their projected completion date(s). If there are unmet obligations upon the expiration of the three (3) year term of this Order, the Defendants shall submit a similar report to the Court and the United States every six months thereafter until all unmet obligations are completed, at which point the Defendants shall submit a

report certifying that all obligations have been fulfilled. The Consent Order will expire sixty (60) days after the final report is filed with the Court.

68.     If money remaining in the Retrofit Fund at the time that the Consent Order expires, including any interest accrued and money added from the Settlement Fund, that has not been spent as required by the procedures and conditions outlined in Section VII of this Order and Appendix K, such money shall be retained by Defendants.

69.     By consenting to entry of this Order, the parties agree that in the event that a Defendant engages in any future conduct occurring after entry of this Order that leads to a determination of a violation of the Fair Housing Act, such conduct will constitute a "subsequent violation" pursuant to 42 U.S.C. § 3614(d)(1)(C)(ii).

## XVIII.     TIME FOR PERFORMANCE

70.     Any time limits for performance imposed by this Consent Order may be extended by the mutual written agreement of the United States and the Defendants.

**IT IS SO ORDERED.**


    ___s/Algenon L. Marbley_____
    **ALGENON L. MARBLEY**
    **CHIEF UNITED STATES DISTRICT JUDGE**

**DATED:  March 25, 2020**

19

Agreed to by the parties as indicated by the signatures appearing below:

**For the United States**:

                                        WILLIAM P. BARR
                                         Attorney General

| | |
|---|---|
| DAVID M. DEVILLERS | ERIC S. DREIBAND |
| United States Attorney | Assistant Attorney General |
| Southern District of Ohio | Civil Rights Division |

| | |
|---|---|
| _s/Matthew J. Horwitz_____ | s/Sara L. Niles_____ |
| MATTHEW J. HORWITZ | SAMEENA SHEENA MAJEED |
| Assistant United States Attorney | Chief |
| United States Attorney's Office | TIMOTHY MORAN |
| Southern District of Ohio | Deputy Chief |
| 221 E. Fourth Street, Suite 400 | SARA NILES |
| Cincinnati, OH 45202 | Trial Attorney |
| Tel. (513) 684-6823 | Housing and Civil Enforcement Section |
| matthew.horwitz@usdoj.gov | Civil Rights Division |
| | U.S. Department of Justice |
| | 150 M Street, NE, Suite 8.119 |
| | Washington, DC 20530 |
| | Phone: (202) 514-2168 |
| | sara.niles@usdoj.gov |
| | |
| | Attorneys for Plaintiff |
| | United States of America |

**Dated**: March 5, 2020

**For Defendants Epcon Communities, Inc.,
and Epcon Communities Franchising, Inc.:**

s/ Scott P. Moore

SCOTT P. MOORE, Esq.
Baird Holm LLP
1700 Farnam Street, Suite 1500
Omaha, NE 68102-2068
Tel: (402) 636-8268
spmoore@bairdholm.com

s/ James E. Arnold

JAMES E. ARNOLD, Esq.
James E. Arnold & Associates, LPA
115 W Main Street, 4th Floor
Columbus, Ohio 43215
Tel: (614) 460-1600
jarnold@arnlaw.com

**Dated**: **March 5, 2020**

List of Appendices:

A- List of Subject Properties

B-1- Retrofits to Public and Common Use Areas at Corporate Properties

B-2- Available Changes to Units at the Corporate and Franchised Properties

B-3- Retrofits to Public and Common Use Areas at Franchised Properties

C- Notice to Owners and Tenants of Subject Properties of Retrofits to Common Areas

D- Notice to Owners of Subject Properties of Availability of Retrofits to Units

E- Acknowledgement of FHA compliance for Architects and Engineers

F- Release of Claims by Aggrieved Person

G- "Notice" to Potential Aggrieved Persons (to be published)

H- List of Organizations to Receive Notice

I- Statement of Employees, Agents and Franchisees that Received the Order

J- Certification of FHA Training

K- Retrofit Priorities and Protocol

**APPENDIX A**
**SUBJECT PROPERTIES**

Corporate Properties

1. Cobblestone at the Preserve, 6200 Stonewalk Lane, New Albany, Ohio.
2. Courtyards at Seldom Seen, 3831 Coral Creek Court, Powell, Ohio.
3. Fountainview at Parkway, 1534 Cascade Drive, Grove City, Ohio.
4. Village at North Falls, 6951 Falls View Circle, Delaware, Ohio.
5. Villas at Canterbury Woods, 595 Havelock Street, Westerville, Ohio.
6. Villas at Glenealy, 6315 Donegan Way, Dublin, Ohio.
7. Villas at Maple Creek, 7544 Red Maple Place, Westerville, Ohio.
8. Villas at Woodcutter, 3285 Timberside Drive, Powell, Ohio.
9. Windsor Bridge at the Preserve, 4150 Windsor Bridge Place, New Albany, Ohio.
10. Woods at Hayden Run, 5867 Timber Top Drive, Hilliard, Ohio.
11. Woods at Sugar Run, 5545 Armstead Avenue, New Albany, Ohio.

Franchised Properties:

1. Ballymeade Village, 665 Ballymeade Village Drive, Beavercreek, Ohio.
2. Bridgewater, 1500 Bridgewater Way South, Mansfield, Ohio.
3. Fairway Villas at Catawba Island Club, 2675 Canterbury Circle, Port Clinton, Ohio.
4. Fairways at Boulder Creek, 9670 Eagle Lane, Streetsboro, Ohio.
5. Quarry Lakes at Amherst, 101 Quarry Lakes Drive, Amherst, Ohio.
6. Reddington Village, Reddington Village Lane, Newark, Ohio.
7. Sanctuary at Plum Brook, 2900 Windsor Bridge Circle, Huron, Ohio.
8. Springfield Ridge, 9151 Springfield Road, Poland, Ohio.
9. Village of Colonial Woods, 201 Abigail Lane South, Mount Vernon, Ohio.
10. Village at Riverwalk, 2800 Riverwalk Boulevard, Lima, Ohio.
11. Villages of River Oaks, 100 Oak Run, Heath, Ohio.
12. Villas at Beavercreek, 2830 Locust Hill Boulevard, Beavercreek, Ohio.
13. Villas at Benchrock, 4661 Cobblestone Drive, Tipp City, Ohio.
14. Villas at Charleston Lake, 6305 Lakeview Circle, Canal Winchester, Ohio.
15. Villas at Foor Farms, 115 Stonegate Drive, Pataskala, Ohio.
16. Villas in Hamilton West, 1343 Cotswold Lane, Hamilton, Ohio.
17. Villas at Milnor Crossing, 101 Jamie Lynn Circle, Pickerington, Ohio.
18. Villas at Park Place, 7955 Beckett Road, West Chester, Ohio.
19. Wellington Place, 5361 East Sheffield Circle, Zanesville, Ohio.
20. Woodland Run, 701 Timberline Drive, Columbiana, Ohio.
21. Woods on Wilkens, 5206 Elizabeth Lane, Mason, Ohio.

**APPENDIX B-1**

**RETROFITS TO PUBLIC AND COMMON USE AREAS AT THE CORPORATE PROPERTIES**

Subject to the limitations in the Consent Order and assuming the specific element listed herein is not currently in compliance with the Fair Housing Act Accessibility Guidelines (the "Guidelines"), ECI will make the following modifications to the public and common use areas at the Corporate Properties:

1. Provide accessible pedestrian routes from all covered unit front entrances to the onsite amenities, including the clubhouse, swimming pool, park benches, gazebos, and mailbox kiosks;
2. Provide compliant accessible parking spaces at each onsite clubhouse with accessible routes connecting the accessible space with the onsite clubhouse front entrance;
3. Retrofit the mailboxes serving all covered units so that the key slots are within the reach range of 48" above the ground for a forward approach or 54" above the ground for a parallel approach; and
4. Provide the following retrofits at the onsite clubhouses and swimming pools:
   a. Retrofit all interior and exterior door thresholds at clubhouses, swimming pools, and restrooms so that they do not exceed ¼" unbeveled;
   b. Retrofit so that the hardware at the pool entrances does not require twisting or pinching of the wrist;
   c. Retrofit protruding objects on pedestrian routes within the onsite clubhouses, such as televisions, wall sconces, and fireplace mantles, by installing a detectable element (*e.g.*, a curb or rail) or altering heights so that there are no objects that protrudes more than 4" into the circulation space at a height between 27" and 80";
   d. Retrofit common use sinks, countertops and bars so that they do not exceed 34" high and provide knee space at common use sinks;
   e. Retrofit thermostats, built-in microwaves, paper towel dispensers, and other common use elements so that they are mounted no higher than 48" above the floor for a forward approach or 54" above the floor for a side approach; and
   f. In bathrooms provide:
      (i) Stall doors that swing in;
      (ii) Route to stall not less than 42" wide;
      (iii) Correctly positioned grab bars;
      (iv) Water closet center line 18" from adjacent wall, in compliance with the Guidelines;
      (v) Correctly position towel and toilet paper dispensers;
      (vi) Modesty panels in urinals not less than 30" wide and not more than 24" deep;
      (vii) Properly insulated sink drain pipes; and
      (viii) Coat hooks installed to not more than 54" above finished floor.

## APPENDIX B-2

## AVAILABLE CHANGES TO UNITS AT THE CORPORATE AND FRANCHISED PROPERTIES

1.      Subject to the limitations in the Consent Order, assuming the specific element listed herein is not currently in compliance with the Fair Housing Act Accessibility Guidelines ("the Guidelines"), and upon request of the current owners, ECI will offer the following retrofits to covered units at the Corporate Properties:

     a. Retrofit front entrance door thresholds so that they do not exceed ¼" unbeveled;
     b. Retrofit thermostats so that they are mounted no higher than 48" above the floor for a forward approach or 54" above the floor for a side approach;
     c. Retrofit outlets so that they are mounted no lower than 15" above the floor;
     d. Retrofit kitchens to provide 30" x 48" clear floor space at sinks;
     e. Retrofit one of the bathrooms to be a compliant Specification B bathroom as defined in the Guidelines; and
     f. Retrofit walk-in closets with less than 32" nominal door clearance to allow entrance.

2.      Subject to the limitations in the Consent Order, assuming the specific element listed herein is not currently in compliance with the Fair Housing Act Accessibility Guidelines, and upon request of the current owners, ECFI will offer the following retrofits to covered units at the Franchised Properties:

     a. Retrofit front entrance door thresholds so that they do not exceed ¼" unbeveled;
     b. Retrofit thermostats so that they are mounted no higher than 48" above the floor for a forward approach or 54" above the floor for a side approach;
     c. Retrofit outlets so that they are mounted no lower than 15" above the floor;
     d. Retrofit kitchens to provide 30" x 48" clear floor space at sinks;
     e. Retrofit one of the bathrooms to be a compliant Specification B bathroom as defined in the Guidelines;
     f. Retrofit toilets to provide 18" centerline from the adjacent wall, in compliance with the Guidelines; and
     g. Retrofit walk-in closets and sliding glass doors to allow at least 32" nominal door clearance.

## APPENDIX B-3

## RETROFITS TO PUBLIC AND COMMON USE AREAS AT THE FRANCHISED PROPERTIES

Subject to the limitations in the Consent Order and assuming the specific element listed herein is not currently in compliance with the Fair Housing Act Accessibility Guidelines, ECFI will make the following modifications to the public and common use areas at the Franchised Properties:

1. Provide accessible pedestrian route from covered unit front entrances to assigned unit parking, including retrofitting steps, lips, thresholds, and/or excessive slopes on walkways connecting unit front entrances to unit parking at: Ballymead Village; Quarry Lakes at Amherst; Reddington Village; Springfield Ridge; Village at Riverwalk; Village of Colonial Woods; Villages of River Oaks; Villas at Beavercreek; Villas at Benchrock; Villas at Charleston Lake; Villas at Foor Farms; Villas at Hamilton West; Villas at Milnor Crossing; Wellington Place and Woodland Run;

2. Replace knob hardware with lever hardware at unit front entrances at Village of Colonial Woods; Wellington Place; and Woodland Run;

3. Provide compliant accessible parking spaces at each onsite clubhouse with accessible routes connecting those parking spaces to the clubhouse front entrances;

4. Retrofit the mailboxes serving all covered units so that the key slots are within the reach range of 48" above the ground for a forward approach or 54" above the ground for a parallel approach; where applicable, including at: Ballymead Village; Bridgewater; Fairways Villa at Catawba Island; Fairways at Boulder Creek; Village at Riverwalk; Village of Colonial Woods; Boulder Creek; Colonial Woods; Villas at Beavercreek; Villas at Hamilton West; Wellington Place and Woods on Wilken, relocate mailbox kiosks and/or provide an accessible curb cut to the mailbox kiosks;

5. Provide the following retrofits at the onsite clubhouses and swimming pools:
   a. Retrofit all interior and exterior door thresholds at clubhouses, swimming pools, and restrooms so that they do not exceed ¼" unbeveled;
   b. Retrofit so that the hardware at the clubhouse and pool entrances does not require twisting or pinching of the wrist;
   c. Retrofit protruding objects on pedestrian routes within the onsite clubhouses, such as televisions, wall sconces, and fireplace mantles, by installing a detectable element (*e.g.*, a curb or rail) or altering heights so that there are no objects that protrudes more than 4" into the circulation space at a height between 27" and 80";
   d. Retrofit common use sinks, countertops and bars so that they do not exceed 34" high and provide knee space at common use sinks;
   e. Retrofit thermostats, built-in microwaves, paper towel dispensers, and other common use elements so that they are mounted no higher than 48" above the floor for a forward approach or 54" above the floor for a side approach;
   f. In bathrooms, provide:
      a. Stall doors that swing in;

b. Route to stall not less than 42" wide;

c. Correctly positioned grab bars;

d. Water closet center line 18" from adjacent wall, in compliance with the Guidelines;

e. Correctly positioned towel and toilet paper dispensers;

f. Modesty panels in urinals not less than 30" wide and not more than 24" deep;

g. Properly insulated sink drain pipes; and

h. Coat hooks installed to not more than 54" above finished floor.

## <u>APPENDIX C</u>

## NOTICE OF RETROFITS TO PUBLIC AND COMMON USE AREAS

The federal Fair Housing Act requires that the public and common use areas at this community have certain features of physical accessibility for persons with disabilities.  Potential inaccessible aspects of the public and common areas at this community have been brought to our attention.  We welcome persons with disabilities as residents and guests.  We have agreed to modify these conditions at our expense.

We are writing to request access to the property to survey the property and develop a concept plan of what specific retrofits may be made to the property.  We will then present this concept plan to you for approval and to begin retrofitting the elements identified in the survey.

We believe that generally, the work will likely include adding, modifying, or "retrofitting" certain unit entrances and walkways, installing ramps or modifying existing ones, and designating accessible parking spaces.  The work may also include some modifications to the clubhouses and mailbox kiosk to make them more accessible to persons with disabilities.

Please contact us regarding this notice and approval at _____.

## APPENDIX D

### NOTICE OF AVAILABITY OF RETROFITS TO HOMEOWNERS AT
_____

The federal Fair Housing Act requires that ground floor homes in newer multifamily communities have certain features of physical accessibility for people with disabilities.  Your home has been identified as one that is covered by the Fair Housing Act's accessibility requirements.

Certain potential barriers in ground floor homes, including the one owned by you, have been brought to our attention.  We have, therefore, agreed, if you choose, to pay for the modification of certain features of your home, at no expense to you, to make it more accessible to persons with disabilities.

Depending on the particular features of your unit, the modifications may include, at your request, the items listed on the attached Exhibit A [Section 1 or Section 2 of Appendix B-2 as appropriate]

If you choose to have the available modifications made to your home, the schedule of the retrofits will take into account your preferences and convenience and, if applicable, those of your tenants.  If it is necessary to vacate the home overnight for us to perform the modifications, we will pay you the applicable government per diem rate for food and lodging in your area for the anticipated length of your displacement. Payment will be provided in advance.

To be eligible to have these modifications completed in a unit, you must respond to us within seventy-five (75) days of the mailing of this notice, identifying which items on the attached Exhibit you would like performed.

We have agreed to pay for these modifications from an established Unit Interior Retrofit Fund.  **RETROFITS WILL BE MADE UNTIL THE UNIT INTERIOR RETROFIT FUND HAS BEEN EXHAUSTED ON A FIRST-COME, FIRST-SERVED BASIS SO TIME IS OF THE ESSENCE.**

You may respond to:

Joseph R. Karpowicz, Assistant General Counsel
Epcon Communities
500 Stonehenge Pkwy, Dublin, OH 43017
(614) 652-3507

## **APPENDIX E**

ARCHITECT AND CIVIL ENGINEER'S CERTIFICATE

I hereby certify that I have read and am familiar with the accessibility requirements and provisions of the Fair Housing Act, 42 U.S.C. § 3604(f) (1)-(3), and the Fair Housing Accessibility Guidelines, 24 C.F.R. Ch.I., Subch. A, App. IV., and that the plans that I am submitting and/or revising are, to the best of my knowledge and belief, consistent with these requirements and provisions.

_____

[Principal Architect or Civil Engineer's Signature]

## APPENDIX F

## RELEASE OF CLAIMS

In consideration of and contingent upon the payment of the sum of dollars ($           ), pursuant to the Consent Order entered in United States v. Epcon Communities, LLC and Epcon Communities Franchising, Inc., Civil Action No. 2:19-cv-4601 (S.D. Ohio), I hereby release and forever discharge the Defendants named in this action and Defendants' parent entities, subsidiaries and affiliates, as well as the officers, directors, members, partners, managers, trustees, franchisees, employees, and agents of Defendants, including in their individual capacity, from any and all liability for any claims under the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*, legal or equitable, I may have against them arising out of the issues alleged in this action as of the date of the entry of that Consent Order.  I fully acknowledge and agree that this release of the Defendants shall be binding on my heirs, representatives, executors, successors, administrators, and assigns.  I hereby acknowledge that I have read and understand this release and have executed it voluntarily and with full knowledge of its legal consequences.

NAME (printed):
SIGNATURE:
DATE:

## APPENDIX G

**NOTICE TO POTENTIAL VICTIMS OF HOUSING DISCRIMINATION**

On _____, 2020, the United States, Epcon Communities, Inc., and Epcon Communities Franchising, Inc. entered into a Consent Order resolving a housing discrimination claim alleging that homes are not accessible to persons with disabilities, particularly persons who use wheelchairs, in violation of the federal Fair Housing Act.  Among other violations, the lawsuit alleges that there are steps leading to some front entrances and that some of the interior doorways, kitchens, and bathrooms are designed in a way that makes them difficult for wheelchair users to enter and use.

The Consent Order establishes a Settlement Fund to compensate persons who have been harmed as a result of the inaccessibility of the following properties:

Corporate Properties

1. Cobblestone at the Preserve, 6200 Stonewalk Lane, New Albany, Ohio.
2. Courtyards at Seldom Seen, 3831 Coral Creek Court, Powell, Ohio.
3. Fountainview at Parkway, 1534 Cascade Drive, Grove City, Ohio.
4. Village at North Falls, 6951 Falls View Circle, Delaware, Ohio.
5. Villas at Canterbury Woods, 595 Havelock Street, Westerville, Ohio.
6. Villas at Glenealy, 6315 Donegan Way, Dublin, Ohio.
7. Villas at Maple Creek, 7544 Red Maple Place, Westerville, Ohio.
8. Villas at Woodcutter, 3285 Timberside Drive, Powell, Ohio.
9. Windsor Bridge at the Preserve, 4150 Windsor Bridge Place, New Albany, Ohio.
10. Woods at Hayden Run, 5867 Timber Top Drive, Hilliard, Ohio.
11. Woods at Sugar Run, 5545 Armstead Avenue, New Albany, Ohio.

Franchised Properties:

1. Ballymeade Village, 665 Ballymeade Village Drive, Beavercreek, Ohio.
2. Bridgewater, 1500 Bridgewater Way South, Mansfield, Ohio.
3. Fairway Villas at Catawba Island Club, 2675 Canterbury Circle, Port Clinton, Ohio.
4. Fairways at Boulder Creek, 9670 Eagle Lane, Streetsboro, Ohio.
5. Quarry Lakes at Amherst, 101 Quarry Lakes Drive, Amherst, Ohio.
6. Reddington Village, Reddington Village Lane, Newark, Ohio.
7. Sanctuary at Plum Brook, 2900 Windsor Bridge Circle, Huron, Ohio.
8. Springfield Ridge, 9151 Springfield Road, Poland, Ohio.

9.  Village of Colonial Woods, 201 Abigail Lane South, Mount Vernon, Ohio.
10. Village at Riverwalk, 2800 Riverwalk Boulevard, Lima, Ohio.
11. Villages of River Oaks, 100 Oak Run, Heath, Ohio.
12. Villas at Beavercreek, 2830 Locust Hill Boulevard, Beavercreek, Ohio.
13. Villas at Benchrock, 4661 Cobblestone Drive, Tipp City, Ohio.
14. Villas at Charleston Lake, 6305 Lakeview Circle, Canal Winchester, Ohio.
15. Villas at Foor Farms, 115 Stonegate Drive, Pataskala, Ohio.
16. Villas in Hamilton West, 1343 Cotswold Lane, Hamilton, Ohio.
17. Villas at Milnor Crossing, 101 Jamie Lynn Circle, Pickerington, Ohio.
18. Villas at Park Place, 7955 Beckett Road, West Chester, Ohio.
19. Wellington Place, 5361 East Sheffield Circle, Zanesville, Ohio.
20. Woodland Run, 701 Timberline Drive, Columbiana, Ohio.
21. Woods on Wilkens, 5206 Elizabeth Lane, Mason, Ohio.

You may be qualified to recover from the Settlement Fund if you (or members of your family or your friends):

- were discouraged from living at or visiting residents one of the above-listed properties because of the inaccessibility problems; or

- were inconvenienced while living at one of above-listed properties by the inaccessibility problems.

If you believe you have been harmed because of the inaccessibility problems at one of the above-listed properties, or if you have information about someone else who may have been harmed, please contact the United States Department of Justice at:

**1-800-896-7743**
**(Leave a message in mailbox 994)**

You may also write to:
United States Department of Justice
Civil Rights Division
Housing and Civil Enforcement Section
150 M Street, N.E., Suite 8.119
Washington, D.C. 20530

You _must_ call or write on or before _____, and your message or letter _must_ include your name, address and, if possible, at least two telephone numbers where you may be reached.

## **APPENDIX H**

## **LIST OF ORGANIZATIONS TO NOTIFY**

Fair Housing Advocates Association

Tri-County Independent Living

## <u>APPENDIX I</u>

<u>Employee Statement</u>

       I _____, am an employee of [Name of Defendant], _____ and my duties include the design and/or construction of covered multifamily dwellings.  I have received and read a copy of the Consent Order in *United States v. Epcon Communities, Inc. and Epcon Communities Franchising, Inc.,* and have been given the opportunity to have questions about the Order answered.


_____
Date


_____
[Employee Signature]

## <u>APPENDIX J</u>

## CERTIFICATION OF FAIR HOUSING TRAINING

On _____, I attended training on the federal Fair Housing Act, including its requirements concerning physical accessibility for persons with disabilities.  I have had all of my questions concerning the Fair Housing Act answered to my satisfaction.


(Signature)


(Print Name)


Date

## APPENDIX K

### RETROFIT PRIORITIES AND PROTOCOL

1.      **Retrofits of Common and Public Use Areas at the Corporate Properties and Phase 1 Franchised Properties:**   Phase 1 Properties include the following Subject Properties: all Corporate Properties, as listed in Appendix A, and the following Franchised Properties: Reddington Village; Village of Colonial Woods; Village of River Oaks; Wellington Place.  After Defendants have conducted the survey and the homeowners association has approved the concept plan and retrofits for any of the Phase 1 Properties, Defendants shall solicit bids for completing the common and public use and area retrofits outlined in Appendices B-1 and B-3 of the Consent Order at that property.  No less than sixty (60) days from receiving approval of a homeowners association, Defendants shall identify the contractor(s) they propose to select and shall submit for approval to the United States a proposed budget and timetable for completing the retrofits to each of these Phase 1 Properties, consistent with paragraph 24 of the Order.  Defendants shall provide the United States with a copy of the bids it received for approval as set forth in this Order and any bids recommended by the Defendants that are not approved within thirty (30) days of receipt shall be deemed approved.  All costs involved in soliciting and obtaining the bids and in preparing a budget and proposed timetable shall be borne by Defendants and shall not be reimbursable from the Retrofit Fund.

2.      **Retrofits of Common and Public Use Areas at Phase 2 Franchised Properties:**  After the United States has approved a final proposed budget and timetable for the retrofits at the each of the Phase 1 Properties, Defendants shall, within three months, submit a proposed budget and timetable for completing the retrofits to the common and public use areas at the remaining Franchise Properties ("Phase 2 Properties"), subject to the same procedures and requirements set forth in paragraph 1.

3.      **Retrofits of Unit Interiors:**  Defendants may begin the process of notifying unit owners at all properties of their right to request retrofits to their unit interiors pursuant to Section VII(b) of the Consent Order.  **ONE-HUNDRED THOUSAND DOLLARS and 00/100 ($100,000.00)** from the Retrofit Fund shall be reserved for retrofits to Unit Interiors (herein, the "Unit Interior Retrofit Fund").  No additional sums shall be deducted for unit interiors and Defendants shall not be required to make interior retrofits to any units once the $**100,000.00** has been exhausted.

4.      **Inspections:** $100,000 from the retrofit fund shall be reserved for inspections carried out pursuant to Section VIII of the Consent Order, and no additional sums shall be deducted for inspections absent approval of the United States.

5.      **Reporting**: Every six (6) months, and at such other times as the United States may reasonably request, Defendants shall provide the United States with the current balances of each part of the Retrofit Fund along with a list of any outstanding invoices.

6.      The provisions of this Appendix may be amended by the mutual written agreement of the parties.